**Joseph Allen ROE, Jr., Movant-Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 55386.**

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1970.

R. H. Mos, Jr., Farley, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

This is an appeal from an order denying a motion filed under Criminal Rule 27.26 to vacate judgments and sentences in two cases (robbery and striking a police officer) in which Joseph Alfred Roe, Jr. entered pleas of guilty.

Pleas of guilty were accepted and appellant was sentenced in both cases on September 5, 1967. Appellant filed a motion to vacate the judgments on May 23, 1969. An evidentiary hearing was conducted at which appellant was represented by an attorney. The transcript of the 27.26 hearing covers 99 pages, plus 14 pages of exhibits. The circuit court entered an order denying the motion to vacate on July 22, 1969. No regular appeal was taken from that order. On January 22, 1970 appellant filed in the Supreme Court a motion under Criminal Rule 28.07 for a special order granting leave to file an untimely notice of appeal. On February 9, 1970 this Court sustained that motion and mailed its mandate to the circuit clerk, who received and filed the mandate on February 10, 1970. On February 26, 1970 appellant, acting pro se, filed a notice of appeal from the order denying his motion to vacate.

■ The Attorney General suggests lack of jurisdiction in this Court for failure of appellant to file the notice of appeal within the proper time. Appellant complied with Criminal Rule 28.07, which authorizes the filing of a notice of appeal in the trial court within twelve months from the date of final judgment if a special order has been obtained from the appropriate appellate court, and therefore we have jurisdiction.

Turning to the merits, appellant makes one point: that the court erred in overruling his motion to vacate because in entering pleas of guilty appellant was misled or induced by fraud, mistake, misapprehension, fear, persuasion, or the holding out of hopes which proved to be false. In support of his thesis appellant cites State v. Hovis, 353

Mo. 602, 183 S.W.2d 147, and State v. Blatherwick, 238 Mo.App. 1005, 191 S.W.2d 1021.

The plea on the robbery charge was taken July 28, 1967. The transcript of that hearing shows that appellant appeared personally and by his court-appointed attorney. The court explained the details of the charge to appellant, who acknowledged that he had discussed the matter with his attorney; that he understood the charge; that he was waiving his right to be tried before a jury and was subjecting himself "to the full penalty and maximum penalty of the law if the court sees fit to invoke that." It was explained to him that the penalty for robbery without a weapon ranges from 5 years to life imprisonment and he stated that he understood. Appellant indicated that he had been given no promises that the judge or anyone else would be lenient with him to induce a plea of guilty, either from the prosecutor's or sheriff's offices; that no one had promised him that the judge would "go easy" on him or in any way be lenient with him. He answered "Yes" to the question "And you're pleading guilty because you are in fact guilty of the crime charged?" The court accepted the plea of guilty, ordered a presentence investigation, and appellant was remanded to the jail awaiting the result of the investigation.

The plea on the assault charge was taken September 5, 1967. The transcript of that hearing shows that appellant again appeared personally and by his previously appointed attorney who had represented appellant at the preliminary hearing of the assault charge. The court explained that appellant was charged with feloniously striking, beating and wounding a deputy sheriff on August 12, 1967 while the officer was engaged in the performance of duties imposed upon him by law. The prosecuting attorney stated in open court that while appellant was serving his time in jail, as a trusty, another prisoner grabbed the deputy and held him while appellant took the officer's revolver and struck the deputy over

the head, causing him to be hospitalized and that appellant fled and was captured several days later. Appellant told the court that he had been counseling with his attorney "since the event took place." The court informed appellant and appellant acknowledged that he understood that by pleading guilty he was waiving his right to be tried by a jury of 12 disinterested people of the county; that the matter could be set and a plea of not guilty entered; that he was presumed to be innocent in this country until proved guilty. Appellant answered that he was entering the plea of guilty because he "did do this thing." He stated that there were no threats, duress, coercion "or anything to get [him] to enter this plea of guilty." He acknowledged that neither the prosecuting attorney, nor the sheriff, nor his attorney had made any "promises of leniency or any treatment [he was] to receive in jail or any place," or "as to leniency or anything," and that he had made no agreement with them to testify against anyone else. The minimum and maximum penalties were stated, and appellant acknowledged that he understood that by pleading guilty the court could sentence him to the maximum for this violation, which is 5 years in the penitentiary. He stated that he had "gone over all of these matters and [had] counselled with [his] attorney on this matter on numerous occasions"; that the attorney had explained "all these things" to him and that he fully understood them. Asked if he wanted more time to counsel with his attorney before the court passed sentence appellant answered negatively. Given further chance to express himself, appellant explained that he was "not captured" after his escape and wanted the court to know that he turned himself in. Appellant stated that he had a chance to consult with his mother, and that he did not want an opportunity to consult with her further before the plea was accepted. The judge asked appellant whether he had any reason why he demonstrated this disregard for law and authority at a time when he was in jail pending a presentence investigation, and indicated that because of appellant's age (17 years) he had been hoping that there was a possibility of parole on the robbery charge. The court stated that under the facts a presentence investigation was unnecessary. After accepting the plea of guilty the court sentenced appellant to 5 years on the assault charge.

The court then resumed the hearing of the robbery plea, which had commenced on July 28. The judge indicated that he had not received the presentence investigation report and that it was not necessary to complete the report. The judge recalled that appellant had previously entered a plea of guilty to the robbery charge. He restated the charge again in detail, and granted allocution. Appellant's counsel recounted his efforts in behalf of appellant: his appearance in magistrate court at the preliminary hearing; his extensive investigation; his trip to a hospital in St. Joseph where appellant had been a patient; his trip to Kansas City to see about the prospects of appellant entering military service; his arranging for appellant's release on bond for a month and a half; his consultations with appellant and his parents; his suggestions of additional or other counsel, etc. Appellant acknowledged that he had no complaint about the representation by his attorney in the robbery charge. They again went over the range of punishment (5 years to life) and appellant twice said he understood that the court could give him life imprisonment. He still persisted in and reaffirmed his plea of guilty entered on July 28 and again stated that he did this because of the fact that he was indeed guilty of the charge. The presumption of innocence, the right to trial by jury and the waiver of trial by jury by pleading were all brought to appellant's attention. The court then accepted the plea and sentenced appellant to 10 years' imprisonment on the robbery charge, to run consecutively with the 5 years in the assault charge for a total of 15 years' imprisonment on the two offenses.

At the 27.26 hearing appellant testified that before the July 28 hearing his attorney told him that the attorney had talked to the judge and that the judge and prosecuting attorney had stated that appellant would be paroled; that he could guarantee him a parole; that was the impression appellant "was under"; that his attorney and two men from the Job Corps interviewed him at the jail concerning prospects of employment through that agency; that after the assault charge was filed his attorney told appellant that he had talked to the judge and asked for the two sentences to run concurrently, but appellant did not remember whether attorney said the judge would or that he might "go along with it." He acknowledged that his attorney had made him no promises since he assaulted the deputy sheriff; and that after that happened his attorney didn't think his possibilities of parole "was too good then." He felt that he had been misled because he thought that they would go ahead with the presentence investigation and that the judge was "going to run it concurrently with the presentence investigation * * * you know, run them together." (Query?)

Appellant's mother and stepfather testified that appellant's attorney stated that if they raised the money for a bondsman's fee he would guarantee that appellant would not spend another day in jail, and that he would put it down in writing.

Appellant's attorney testified that at no time did he guarantee appellant a parole; that he discussed the plea of guilty with appellant a number of times; that appellant understood that probation and parole were up to the court and the court only; that he had never led appellant to believe that the sentence would be less than that actually passed on him.

After the taking of evidence at the 27.26 hearing was concluded the judge engaged in an extensive exchange with appellant, apparently in an effort to get at the heart of his complaint, and to give him every opportunity to express himself "about anything pertaining to these two matters." The sum and substance of this exchange was the expression by appellant that, although he was guilty of both charges and deserved to be punished, his real complaint was that he felt that the court gave him too much time for a first offender; that 15 years is too much; that he "would be happy" if he had 5 years to serve.

In his findings of fact and conclusions of law denying appellant's motion the trial court found that appellant "knew and fully understood the charges contained in the Information, and did enter a voluntary plea to both said charges"; that appellant's attorney "did in no way promise or guarantee the Defendant a parole if he would plead guilty," and generally found "beyond a reasonable doubt against Movant and for the State on all facts offered in support of, and against all grounds raised * * *."

■ Appellate review of the order of the trial court is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." Criminal Rule 27.26(j). Clear error has not been demonstrated. Appellant's point that he was misled was based upon the claim that he was induced to plead guilty in the belief that he would be paroled. He and his relatives testified that his attorney had guaranteed him a parole. The attorney testified contrarily that he had not guaranteed a parole. Appellant is contradicted not only by the testimony of his attorney but also by his own statements and answers to questions at the time of the hearings of July 28 and September 5, which clearly show that he was not misled, etc. It was a question of credibility of the witnesses, a matter peculiarly within the province of the trier of the fact. The trial judge believed the attorney and disbelieved the contrary evidence.

As a practical matter if appellant actually believed at the time he entered the first plea on July 28 that he would be paroled he had

no reasonable basis on September 5 to continue in this belief, in view of his conduct in the meantime (committing a violent criminal assault upon the deputy sheriff to effect an escape, while enjoying the status of a trusty at the county jail). Appellant must have known that as a result of that episode his chances of parole had vanished. Indeed, he concedes that after that happened his attorney told him that his possibilities of parole were not too good, and acknowledges that thereafter his attorney made no more of the alleged promises of parole. On September 5, notwithstanding appellant was given an opportunity to withdraw his plea of guilty previously entered on the charge of robbery, and have a jury trial on both charges, he persisted in his desire to plead guilty, and in so doing we are convinced that he was acting with full comprehension of the significance of his actions, the likelihood that he would *not* be paroled, and without any reasonable basis to expect lenience in the length of the sentences or to hope for an order that they run concurrently. A thorough review of this record leaves us with the definite impression that no miscarriage of justice has occurred and that no mistake has been made; that appellant was not misled or induced to enter his pleas by fraud, mistake, misapprehension, fear, persuasion or the holding out of hopes which proved to be false.

The order of the trial court is not clearly erroneous, and is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

SEILER, P. J., HOLMAN, J., and RANDALL, Sp. J., concur.

BARDGETT, J., not sitting.