Paul M. Wooldridge, Boonville, for appellant.

**STATE of Missouri, Respondent,**

**v.**

**William Thornton HARRIS, Jr., Appellant.**

**No. 55716.**

Supreme Court of Missouri, Division No. 1.

June 14, 1971.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motion under Criminal Rules 27.26 and 27.25, V.A.M.R., to vacate and set aside judgment of conviction and sentence of 18 years' imprisonment entered upon plea of guilty to charge of robbery, first degree. §§ 560.120, 560.135, V.A.M.S.

As grounds for relief, the motion asserted:

"(a) The defendant was made a promise of eight (8) years to enter a plea of guilty; such promise was made by the prosecuting attorney, and the defendant was given eighteen (18) years after entering plea of guilty.

"(b) The defendant was threatened with the GAS CHAMBER death sentence, if he

did not enter a plea of guilty * * * he feared being given death, inasmuch as the said threat was made the plea was coerced.

"(c) The defendant did not have an attorney at or during his preliminary hearing, * * * the same day that the defendant was arraigned for preliminary hearing is the day that the court appointed the * * * attorney but the defendant did not see or converse with the attorney * * * until the day of * * * entering of the plea of guilty."

In denial of the motion, the trial court made these pertinent findings of fact and conclusions of law:

"Movant's basic complaint is that his plea of guilty was involuntary because of (1) a promise by the prosecutor to get a sentence of eight years and (2) threats of the prosecutor that if he stood trial he would get the death sentence or at least life. In view of this contention this part of the motion will be treated as presenting the issue of whether Movant is now entitled after sentence to withdraw his plea of guilty and have the judgment of conviction set aside 'to correct a manifest injustice' pursuant to S.C.R. 27.25.

"The court after hearing the evidence makes the following findings:

"1. That an offer was made to Movant that if he would plead guilty to the charge of robbery with a dangerous and deadly weapon the prosecuting attorney would recommend an 8 year sentence to the court. There was no promise made by the prosecutor to see that Movant got an 8 year sentence and there were no misrepresentations made to Movant to induce him to plead guilty.

"2. Movant testified he was threatened by the prosecuting attorney that as a Negro if he did not plead guilty and wanted a jury trial that the prosecutor would see that the white folks of the county would give him a death sentence or at least life imprisonment. Movant claims that he plead [sic] guilty because of fear as a result of this threat made by the prosecutor. The court finds that although the Movant did confer directly with the prosecuting attorney on several occasions that he was not threatened and that the plea of guilty was not entered by reason of fear of the consequences of standing trial as a result of any threat by the prosecuting attorney.

"3. There is no showing or complaint by Movant that he did not understand the nature and extent of the charge against him and the range of punishment. Movant does not deny his guilt of the charge or advance any theory of defense. Movant's apparent complaint is that he received a more severe sentence than he anticipated.

"4. The court finds that Movant entered a guilty plea in open court while represented by able counsel. That no promises, misrepresentations or threats were made to Movant to induce or coerce him to plead guilty. That the guilty plea was voluntary and made with the understanding of the nature and extent of the charges and the range of punishment.

"5. Movant complains that he did not have an attorney at or during his preliminary hearing. The court finds that an attorney was appointed for Movant and on his advice a preliminary hearing was waived.

"6. Movant also complains in his motion that he did not see or converse with his attorney until the day he appeared in Circuit Court and entered his plea of guilty. The court finds that there is no showing that counsel did not properly advise Movant or that he failed to explain to Movant the charge or was incompetent in any way."

Appellant contends the court erred in finding his plea of guilty was voluntary because it "failed to find that the defendant was not misled or under misapprehension or that he could not have reasonable been misled thereby causing his plea of guilty"; and he charges (pro se) that the court erred in finding "that movant was adequately represented by counsel * * *

because of the failure of counsel to instruct movant of all avenues of defense * * *, and further giving his permission for the prosecuting attorney to interrogate movant and coercion (sic) a plea of guilty from him without the preseance of counsel."

The record shows that William Thornton Harris, Jr., was arrested February 6, 1965, for participation in an armed robbery in Fayette, Howard County, Missouri. A preliminary hearing was set for February 19, 1965. On that date, defendant appeared without counsel; Mr. Wilbur F. Daniels of the Howard County Bar was appointed to represent defendant, and the preliminary hearing was waived on advice of counsel. The plea of guilty was entered and sentence was pronounced March 4, 1965, and this motion was filed March 28, 1969.

All testimony was adduced by appellant. From his own version of the circumstances, it appears that he was twenty-three years old when arrested in Columbia for the Fayette robbery. He consulted with the prosecuting attorney, Clyde Rogers, in his office "once or twice" before the preliminary hearing. On these occasions Mr. Rogers told him he would recommend an 8-year sentence on a plea of guilty to first degree robbery. He understood that the prosecuting attorney had no power to fix the sentence. He first consulted with his attorney, Mr. Daniels, on February 19, 1965, "on the telephone in the prosecutor's office * * * and he said he would be down to the jail to talk with me in the next day or so." He next saw Mr. Daniels "about ten minutes before I went to court on March the 4th." Sometime after the preliminary hearing Mr. Rogers "had me brought up," and they discussed a pending burglary charge which "he said he would drop * * if I would plead guilty to the robbery." The conference lasted about "half an hour or forty-five minutes." Mr. Daniels was not present and defendant "didn't know whether he was suppose[d] to be there or not." At the last conference with Mr. Rogers, he changed any agreement with respect to the guilty plea and said "he would

recommend me to twenty years." He wanted to plead not guilty and "we had a misunderstanding about it * * * and this is when he threatened me that my charge carries the maximum penalty * * * and I hadn't talked with my attorney and I didn't know what really to do." He had discussed other difficulties with the prosecuting attorney on frequent occasions. In conference with Mr. Daniels on March 4, 1965, "he asked me if this is still what I wanted to do is plead guilty, and I told him yes, and I explained to him that the prosecutor said that he would ask for twenty years, and he said if he did do that, being this is my first felony conviction, that the court probably wouldn't go along with the recommendation. * * * Told him we had talked about eight years and then he called me back after preliminary and before I came to court me and him had words and he put it at twenty years, that he would ask for that." Mr. Daniels thought he would get "something like ten years * * * being it was my first felony conviction." Mr. Daniels made no such guarantee. Mr. Daniels spoke and argued in his behalf at the court proceeding. Defendant acknowledged that when he pleaded guilty the court questioned him with respect to promises or inducements, explained his rights, and that he was informed of the possible penalties if he pleaded guilty. He was surprised when he got eighteen years "because the prosecutor had asked for twenty," which was "the last thing he had said" with respect to a recommendation.

Wilbur F. Daniels was appointed counsel for defendant by the magistrate court. "Judge Funk called me and * * * I went over there and discussed it briefly with him, and at that time I advised him that * * * there was no point in having a preliminary hearing, and we waived it. * * * I talked to him two or three different times and my understanding was he wanted to plead guilty, there was never any question about that, the hassle was over punishment." He conferred with the prosecuting attorney and learned that the de-

fendant "had been negotiating with the prosecutor about the sentence. * * * And I never did make too much sense out of what the negotiations were but * * * what I understood about it * * * from this defendant and Clyde was that if he plead [sic] guilty that there was some talk at one time about an eight-year sentence, and I talked to him and he didn't want to take eight years, so I was trying to get Clyde to reduce the recommendation to a lesser number that would appeal to him, and that is where we hung up, so * * * from Clyde's standpoint, * * * if he didn't want to plead guilty to eight we just won't have any recommendation and Clyde would argue for twenty years." He acquiesced in the conferences between his client and the prosecuting attorney because, as he told the prosecuting attorney, "anything you all can work out I would want to reserve judgment on and perhaps advise him, but do all the talking you would like." Following any such conferences and before entry of the guilty plea, Mr. Daniels "told Harris that if he did not follow through with whatever the deal was that he had had with Clyde, * * * that Clyde would recommend twenty years, and that we had two alternatives, one was to try it before a jury and see what happened, which I told him I'd do, didn't think much of it but I told him I'd do it, or the other one was to come in before the Judge and he wanted two years and I'd argue for two years and leave it up to the Court. * * * And I also told him * * * I'd rather take my chances with the Judge than I would with the jury because I thought the Judge would perhaps be more lenient * * * so I recommended that we argue the matter before the Judge and abide with his judgment, which we did, and which he understood. * * * There was never any argument about guilt, * * * punishment is what we were fighting, he knows that. * * * I have known this boy and the mother for a long time, and I don't know anything about any negotiations that were had between he and the prosecutor other than when I talked to him, but from the standpoint of our conferences here that day there was certainly no misunderstanding in my mind about anything concerning the amount of the punishment * * * that it was going to be put up to Your Honor. In other words the amount of punishment was left open, undetermined, unpromised, and unascertained, and I can see my function to be to try to get the court to give this defendant the smallest punishment he can get and ask for two years, which is three years under the minimum, which was asked for, and the Court made a judgment."

Clyde Rogers, the prosecuting attorney, "had several conversations with the defendant, Mr. Harris, and with his attorney * * *." Some took place before the appointment of Mr. Daniels and some without his presence. "* * * my primary concern in my discussions with Mr. Harris was to determine the involvement of the other two codefendants * * * and the case * * * against Mr. Harris was a very strong * * * case * * * and the case against the other two * * * was * * * a rather weak circumstantial case * * *." He informed him that the charge was first degree robbery and of the range of punishment. He thought the maximum a jury might give would be twenty years. He had known "Jackie" for quite a while and "I finally told Jackie that I would recommend eight years * * *. Jackie felt like he should not draw that severe of penalty. He was of the attitude that * * * he ought not to have more than two or three years punishment. He didn't seem disposed to vary from his position * * * and I wasn't inclined to vary from my position * * *, and I told him that he had the right to enter a plea of guilty * * * and he also had the right to be tried by a jury, that if he entered a plea of guilty and wasn't satisfied with what my recommendations to the court were or would be that he had the right to ask the court to sentence him, and I said if you do this, Jackie, * * * when the judge asks me for a recommendation that I'll tell him that you are not in agreement

with me * * * and that we are making the plea of guilty without any agreement between us * * * and then your counsel will argue * * * that you ought to have the least possible and I'll argue * * * that he ought to give you twenty years * * * and I told him that if he didn't want to accept the eight years that I was willing to recommend that he could be sentenced by the court and we would argue to the court about punishment * * * and we would make it clear to the court that there was no agreement * * * and this is what we did * * * and the court pronounced the eighteen-year sentence." The defendant never indicated he would plead guilty and accept an eight-year sentence, "but he plead ·[sic] guilty with the understanding between him and me and counsel that he wanted to argue to the court * * * to be sentenced to a lesser term than eight years and· I informed them that if this was the case * * * we would enter the plea without any recommendation from me and I would in turn argue * * * for a term of twenty years. And that is what I did." Mr. Rogers became irritated with defendant "because of the trouble that he got in to from time to time. I spent * * * quite a bit of time talking to Jackie and trying to * * * give him some help * * *. I have known Jackie almost all my life * * * and to the extent that they [his efforts] didn't seem to produce anything I got irritated, but I have never had any feeling of animosity towards Jackie * * *. I know that I never said I'd get him the gas chamber * * * I don't believe I called him Nigger, I always called him Jackie * * *. I had talked with Mr. Daniels before and he knew the impasse * * * eight or three years, and there didn't seem to be me coming off my position or their coming off their position, and he and I discussed it on the phone and he said go ahead and talk to him." Jackie wanted three years. "It would have required a reduction in the charge and this was something. I wasn't willing to do * * *."

In these proceedings the burden of proving grounds for relief was on·the movant; and, upon this review, the findings and conclusions of the trial court are presumptively correct, are not to be set aside unless clearly erroneous, and they are clearly erroneous only if upon the entire record the court has a definite and firm conviction that a mistake has been made. Bosler v. State, Mo., 462 S.W.2d 768, 770; Crosswhite v. State, Mo., 426 S.W.2d 67, 70–71 [1].

■ Both appellant and respondent submit that the law applicable to the first contention in this case is stated, State v. Rose, Mo., 440 S.W.2d 441, 443: "If the defendant should be misled or be induced to plead guilty by fraud or mistake, by misapprehension, fear, persuasion, or the holding out of hopes which prove to be false or ill founded, he should be permitted to withdraw his plea." State v. Edmondson, Mo., 438 S.W.2d 237; State v. Smith, Mo., 421 S.W.2d 501; State v. Roach, Mo., 447 S.W.2d 553; and see also State v. Tyler, Mo., 440 S.W.2d 470, suggesting that a judge should not ordinarily participate in plea discussions and recognizing that such usually occur between the attorney for defendant and the prosecuting attorney.

In spite of the detail and clarity of the trial court's findings, appellant contends that his guilty plea was not voluntary, arguing that the court "did not fully consider whether the defendant was misled or under misapprehension nor did it answer the question of whether defendant could have reasonably been misled by the discussions with the prosecuting attorney."

· The testimony has been stated and quoted in detail because it demonstrates the conflicts and equivocations which the trial court had to resolve. Movant's testimony is in conflict with the record and with that of his counsel and the prosecuting attorney; and it is, in itself, equivocal. As recognized by present counsel, "There was a difference of opinion among the parties * * as to whether or not an agreement was in

effect." With the case in this posture, it may not be said that the trial court's findings and judgment are "clearly erroneous." Rule 27.26, supra.

From all the evidence the court properly could find that defendant intended to plead guilty and that the only open question was the amount of punishment. The discussions between defendant and the prosecuting attorney showed that the prosecuting attorney offered to secure the defendant an eight-year sentence in exchange for his guilty plea, but when the defendant refused to forgo his desire for a lesser punishment the prosecuting attorney withdrew the offer. Equally clear from the evidence is that subsequent negotiations between defendant, his counsel, and the prosecuting attorney produced no agreement on punishment and that defendant pleaded guilty with the assistance and advice of counsel, knowing that the prosecuting attorney would "argue" for a 20-year sentence. Appellant's only surprise was in getting eighteen years when the prosecuting attorney had asked for twenty. It is not disputed that the court received the plea only after determining questions with respect to coercion and inducement, advice as to rights and understanding as to range of penalty. See Roe v. State, Mo., 459 S.W.2d 371, where a similar change of circumstances occurred in the course of plea negotiations. The only support for appellant's asserted agreement with respect to an eight-year sentence is his own equivocal testimony, and the court was entitled to reject its effect on a determination of credibility. Shoemake v. State, Mo., 462 S.W.2d 772.

■ On the charge of ineffective assistance of counsel, appellant asserts that he was not adequately represented for the reason "that counsel was not appointed until ten (10) minutes prior to his arraignment and sentencing in the Circuit Court * * (and) movant was forced to proceed thru a preliminary hearing in a capital case without counsel."

This assertion is in error because the record shows that Mr. Daniels was appointed prior to preliminary hearing and advised defendant at that time at least to the extent that the hearing was waived on advice of counsel, and he participated as counsel for defendant through the plea and sentencing process.

His complaint that counsel allowed him "to be interrogated and coerced by the Prosecuting Attorney" also is shown by the record to be unfounded. The discussions between defendant and the prosecuting attorney took place with counsel's knowledge, with his hope that defendant might be able to satisfy himself by way of a bargain when counsel felt he had gone as far as he could in negotiating for punishment, and with a reservation of judgment on the result of any such conference. There was no issue of guilt in the case; consequently, there was no self-incrimination problem. The prosecuting attorney's purpose was clear and twofold: he was discussing another problem with a defendant he had known for years, and he hoped to get help from him in order to prosecute two codefendants whose cases otherwise rested on circumstantial evidence. Appellant's assertions that counsel exposed him to threats by the prosecuting attorney are supported, if at all, by his own testimony, shown to be equivocal in several instances; and the court properly considered its credibility against the testimony of Mr. Rogers in description of the conferences between himself and defendant.

The testimony relating to the time available for consultation with counsel is also in conflict, defendant limiting it to ten minutes and counsel testifying to conferences on two or three occasions together with discussions with Mr. Rogers and his presence in court.

In summary, the answer to all such assertions is that on this record the trial court properly found that movant did not adduce

evidence which would demonstrate that counsel was ineffective in his assistance.

Judgment affirmed.

HOUSER, and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.