**STATE of Missouri, Respondent,**

v.

**William TOWNSEND, Appellant.**

**No. 55053.**

Supreme Court of Missouri,
Division No. 1.

Feb. 8, 1971.

John C. Danforth, Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Willard B. Bunch, Chief Defender, Kansas City, of counsel.

DONALD E. DALTON, Special Judge.

On November 28, 1953, appellant was given a life sentence upon his plea of guilty to first degree murder. On August 19, 1968, he executed and subsequently filed his motion under Criminal Rule 27.26, V. A.M.R., to set aside the conviction and sentence. The motion was overruled after an evidentiary hearing therein, and Findings of Fact and Conclusions of Law were made. We are to determine whether or not such findings and conclusions are clearly erroneous. Crosswhite v. State, Mo.Sup., 426 S.W.2d 67.

Appellant raises two points on this appeal: First, that the plea of guilty was involuntary and, second, ineffective assistance of counsel.

At the evidentiary hearing a transcript of the proceedings at sentencing was introduced in evidence. Relevant portions of the transcript are as follows:

"THE COURT: You are William Townsend?

THE DEFENDANT: Yes, sir.

MR. SIMON: Your Honor, at this time the defendant asks leave of Court to withdraw his plea of not guilty and enter a plea of guilty to the charge of murder in the first degree.

THE COURT: Very well.

MR. SIMON: Your name is William Townsend?

THE DEFENDANT: Yes.

MR. SIMON: Is it your desire at this time to enter a plea of guilty to the charge of murder in the first degree?

THE DEFENDANT: Yes.

MR. SIMON: You understand it is up to the Court to assess the punishment for the crime?

THE DEFENDANT: I do.

THE COURT: Do you understand you are charged with murder in the first degree?

THE DEFENDANT: Yes, sir.

THE COURT: By shooting?

THE DEFENDANT: Yes, sir.

THE COURT: You are represented by Mr. Simon?

THE DEFENDANT: Yes, sir.

THE COURT: And also by Mr. James Morris?

THE DEFENDANT: Yes.

THE COURT: And also by Mr. Richard Southall?

THE DEFENDANT: Yes.

THE COURT: You have consulted with them, have you?

THE DEFENDANT: Yes.

THE COURT: You have consulted with some of your family?

THE DEFENDANT: Yes.

THE COURT: You understand this, now; you understand the seriousness of it, do you?

THE DEFENDANT: Yes, sir.

THE COURT: How old are you?

THE DEFENDANT: Twenty-four."

Thereafter, the prosecutor described the offense giving the date, the name of the victim, and further relating that appellant was hitchhiking and obtained a ride with the subsequent victim; that appellant was armed with a .38 calibre revolver, fully loaded; that they stopped the automobile at the Little Blue River on Highway 40; that they went some five or six hundred feet south of the highway along the river and at a point about 25 to 30 feet from the riverbed appellant shot the victim through the right eye causing almost instantaneous death; that appellant went

through the victim's pockets and took his wallet containing $13.00 and identification cards; that prior to the commission of these acts appellant had voluntarily stated to parties (unnamed) that in order to hold face with a group of associates he would have to kill someone; that after the commission of the act he stated to the same parties that he had accomplished his mission, that he had killed someone and he displayed the victim's wallet containing the identification cards. The prosecutor further described how appellant obtained the weapon, what he did with it after the shooting and that it had been recovered. The prosecutor then related a prior Indiana conviction for rape and a sentence of from one to twenty-one years and made his recommendation of life imprisonment.

Thereafter appellant's counsel made a plea that appellant's life be spared and the following occurred:

"* * * THE COURT: Do you have anything to say before the Court pronounces sentence on you?

THE DEFENDANT: No.

THE COURT: Is there any legal reason why the Court should not now pronounce sentence?

THE DEFENDANT: No.

THE COURT: You have been advised by counsel and have talked to your father and family?

THE DEFENDANT: Yes, sir."

Defendant was sentenced to life imprisonment.

■ Appellant attacks the voluntariness of his plea in that it was entered as a result of coercion. The major portion of the coercion he complains of consists of his being informed of the possibility of the death sentence upon a trial to a jury and that he was advised of the greater probability of a life sentence (the minimum for first degree murder) upon a plea of guilty. The trial court's finding that such did not constitute coercion nor render the guilty plea involuntary is not clearly erroneous. Compare North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162.

■ Other complaints of coercion or threats relate to a statement by police officers to appellant's father that, "We are going to get him." When taken in context with the balance of the father's testimony it is apparent such statement referred to the officers' confidence that they would arrest appellant. Other complaints were bald statements and conclusions by appellant that he was threatened without reference to the nature of the threat or the manner in which it was communicated. The trial court had opportunity to observe appellant and determine the credibility of his testimony. All of his complaints of threat and coercion when taken as a whole and with the transcript at sentencing do not point otherwise than that there was no clear error on the part of the trial court in its finding that the plea of guilty was entered voluntarily.

■ Appellant in his brief further contends that the prosecutor in his statement of the facts did not relate facts indicating the element of deliberation. In support of this he quotes the following language of the prosecutor: "There the defendant, *for whatever provocation we are not sure,* shot the Father through the right eye, causing almost intantaneous (sic) death." (Emphasis supplied.) However, in the same recitation of facts the prosecutor went on to say, "The State would further show that he had made voluntary statements prior to the commission of this act that he, in order to hold face with a group of associates he had, would have to kill someone. When he returned he told the same parties that he had accomplished his mission, that he had killed someone, and he displayed the Father's wallet containing the identification cards."

■ Furthermore, appellant contends that he did not "confess the charge to be

true," Section 546.020, V.A.M.S. However, again it appears clear that appellant expressed his desire to enter a plea of guilty to the offense of murder in the first degree and acknowledged that he understood the charge, that it was done by shooting and that he understood the seriousness of it and after a full recitation of the circumstances surrounding the offense he was specifically asked if he had anything to say before the court pronounced sentence, to which he replied, "No."

 Appellant's second contention of ineffective assistance of counsel is totally without merit. By his testimony he admits that at the time of his plea of guilty he was represented by three court-appointed attorneys and that he has no complaint against two of those attorneys. The record shows all three present at the taking of his guilty plea. We rule this point against appellant.

No error appearing, the judgment is affirmed.

HOLMAN and BARDGETT, JJ., concur.

SEILER, P. J., not sitting.