**Aaron PRIDGEON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 56674.

Supreme Court of Missouri, Division No. 2.

April 10, 1972.

John J. Cosgrove, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Willard B. Bunch, Chief Defender, Kansas City, of counsel.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

Aaron Pridgeon appeals from a judgment overruling his motion filed under Criminal Rule 27.26, V.A.M.R., tó vacate a judgment of conviction entered upon a plea of guilty to a charge of robbery in the first degree on which he received an 8-year sentence.

Appellant alleged that he was misled into entering the plea of guilty; that his attorney advised him and led him to believe that he would receive no more than a 5-year sentence.

The transcript of the proceedings at the time appellant pleaded guilty, introduced in evidence in the 27.26 proceeding, shows that during the empaneling of the jury at his trial (at which he was represented by privately-employed counsel of his own choosing) appellant changed his plea of not guilty to a plea of guilty at his request, and that an extended and searching inquiry was conducted before the guilty plea was accepted. Appellant, in the presence of the trial judge and prosecuting attorney, answered questions posed by his counsel affirmatively showing that appellant understood that he could go ahead and have a full trial to the jury; that the range of punishment for robbery in the first degree is "anywhere from five years' imprisonment to life imprisonment"; that appellant might get life or get any term of years less than life; that he was charged under the Habitual Criminal Act, so that the jury would only determine his guilt or innocence and the court would pass sentence; that he had talked with his counsel numerous times and with his mother; that he had "pretty much put it on [the attorney's] shoulders to advise [him] as to what [he] should do"; that his attorney had discussed the evidence with him; that it was his desire to change his plea to guilty with the understanding that "the court is not bound by any recommendation that the state makes, that is to say that if Mr. Fitzgerald on behalf of the state should recommend five, ten, fifteen, twenty or thirty years or anything like that that the court is not bound by that, the court will pass upon your sentence strictly on what the court feels your sentence should be"; that he was withdrawing his not guilty plea and entering a plea of guilty voluntarily, "and not because of any promises or anything that—any threats or promises people have made [to him] or [his lawyer had] made or anybody else—[he was] doing this because [he was] guilty." The court then inquired of appellant as to his schooling (to the twelfth grade); twice elicited that appellant understood his right to a jury trial with the aid of counsel, and that he knew that his attorney was willing to try the case before the jury and present any evidence as a defense warranted by the facts and law. The court further ascertained from appellant that he understood and had been fully advised that if the court accepted his plea of guilty there was only one thing remaining to be done (sentencing), and obtained from appellant a negative answer to questions whether he

had been or was then subjected to any sickness, illness, mental or nervous condition preventing him from understanding the consequences of his guilty plea and that he had not been induced by any threats, promises or offers of reward to plead guilty. Appellant told the judge that he was in good health mentally and physically; understood that the minimum sentence that could be imposed was five years and the maximum was life imprisonment; had discussed the plea of guilty "in full and at length" with his attorney and his parents; had no criticism of the representation by his attorney, who had done all that could reasonably be done in his behalf in defense of the case. The court then asked this question: *"Has this plea of guilty, which you are about to enter in this case been induced by any promises or representation by anyone as to what sentence this court might impose?"* Appellant answered *"No, sir."* Appellant further stated that he was pleading guilty for no other reason than the fact that he was guilty. Not yet fully satisfied the court asked appellant what he did, whereupon appellant described the facts of the robbery in detail, telling how he and his confederate took a money sack from a laundromat operator at gun point; how they required the operator to open the coin changers with his keys, and that he was carrying a 16-inch Slim Jim knife at the time. Finally the court accepted the plea of guilty and at appellant's request ordered a presentence investigation. After receiving the presentence report and conducting a further hearing the court finally passed the 8-year sentence on appellant.

At the 27.26 hearing appellant's mother testified that appellant's attorney told her that if her son pleaded guilty he would get the minimum, five years, and possibly get out on parole. Appellant, acknowledging the correctness of several different portions of the transcript record of what occurred at the hearing at which the plea of guilty was accepted, testified that contrary to that record and in fact his attorney

promised that if he pleaded guilty he would get five years; told him that if he did not enter a plea he probably would get more than five years; gave him to understand that the prosecutor had agreed to five years and that "they" (meaning the prosecutor, his attorney and the judge) had talked and that "he" (the trial judge) said appellant was going to get five years. Appellant admitted that at the time he pleaded guilty he told the judge that no promises had been made to him but claimed that his attorney told him he probably would be asked that question and that if he told the judge that promises had been made the court would not accept his plea and advised him to say "No" if the judge asked if he had been promised anything. Appellant testified that he "lied" to the court when he said "No" to the question whether he had been promised anything; that his attorney had told him that the procedure is to ask these questions but he should go ahead and say "No"; that when he said "No" he meant that "nobody had made no promise, but they had"; that the attorney told him to say "No" and not to worry, that he would get five years.

The attorney testified that he advised appellant to plead guilty and told appellant the following: that a guilty plea must be voluntary and the judge would not accept a guilty plea if appellant told the judge that any promises had been made to him; that the prosecutor would recommend five years; that he thought the court would give appellant the minimum sentence of five years (but did not *promise* or *guarantee* that appellant would get five years); that he advised appellant of the range of punishment and told him that it was "strictly up to the judgment of the court as to whether he would get five years or more than that." The attorney further testified that appellant understood he could get anywhere from five years to life imprisonment. He denied telling appellant that he had talked to the judge and that he had a promise as to what sentence the court would impose on a plea of guilty;

denied that he told appellant to say to the court that no promises had been made to him; denied that he told appellant to lie to the court.

The vital, determinative issue on the 27.26 hearing was whether it was true, as appellant and his mother testified, that appellant was promised a five-year sentence for a plea of guilty and that he relied upon that promise, or whether the testimony of the lawyer that he made no such promise to appellant was true, and whether in fact appellant thoroughly understood that notwithstanding his lawyer's opinion and notwithstanding the time the prosecutor would recommend, it was entirely up to the court to determine the length of the sentence, and that appellant knew that upon entering the guilty plea he might receive more than five years. This was a question of credibility of witnesses on conflicting testimony, within the province of the trier of the fact to resolve. There is ample basis for the rejection of appellant's testimony and the acceptance of the testimony of appellant's counsel. There is substantial evidence in support of the court's findings of fact and conclusions of law. We are not left "with the definite and firm conviction that a mistake has been committed" by the court. Crosswhite v. State, Mo.Sup., 426 S.W.2d 67, 71. On the contrary, we are firmly convinced that the court's resolution of the determinative issue was the only sensible, acceptable and truthfully supported result that could be reached.

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

MORGAN, P. J., HENLEY, J., and FINCH, Alternate Judge, concur.

DONNELLY, J., not sitting.