**Delbert R. CROSSWHITE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 53108.**

Supreme Court of Missouri,

Division No. 2.

April 8, 1968.

W. Clifton Banta, Charleston, for appellant.

Norman H. Anderson, Atty. Gen., L. James Gardner, Asst. Atty. Gen., Jefferson City, for respondent.

FINCH, Presiding Judge.

Defendant appeals from an order overruling his motion under Supreme Court Rule 27.26 (all references are to V.A.M.R.) to vacate a judgment and sentence dated July 23, 1937, which sentenced him to life imprisonment on a charge of first degree murder.

On December 11, 1966, defendant filed pro se his motion to vacate. In it he alleged with reference to his first degree murder conviction that (1) he agreed, without benefit of counsel, to waive a preliminary hearing but didn't go before the Justice of the Peace to waive the preliminary; (2) his circuit court appointed attorneys were incompetent and did not interview witnesses and simply urged defendant to enter a plea of guilty; (3) the jailer coerced defendant and promised him a parole if he would plead

guilty; and (4) his plea of guilty was not entered of his own free will.

The Circuit Court appointed W. Clifton Banta of Charleston to represent defendant on his 27.26 motion, and he has done so in a very capable manner in both the Circuit Court and on appeal.

The trial court set the motion for an evidentiary hearing, which was held April 11, 1967, with defendant present. Record entries in the original prosecution, introduced at that time, disclose that on June 29, 1937, defendant was brought before Owen Cook, Justice of the Peace, at which time he waived his preliminary hearing. On July 12, 1937, defendant was brought before the Circuit Court, at which time he was without counsel. The court gave defendant until July 15, 1937, to obtain private counsel. On July 16, 1937, defendant was again brought before the Circuit Court and still had not employed counsel. He requested that counsel be appointed, and the record discloses that the court appointed W. H. Grissom and John Fletcher, both members of the Mississippi County Bar, to represent defendant. On July 21, 1937, defendant appeared with counsel in the Circuit Court and entered a plea of guilty, but sentencing was deferred. Then on July 23, 1937, defendant again appeared with counsel and was sentenced to life imprisonment.

The evidence on behalf of defendant (other than the record entries reviewed above) consisted principally of the testimony of defendant himself. It was as follows: He was brought to the jail on the night of June 25, 1937. On the next morning, James Haw, the Prosecuting Attorney, talked to him briefly. Then on the morning of June 29, Haw came to the jail and asked him if he wanted to waive a preliminary hearing. Haw did not explain what a preliminary hearing was and he knew nothing about it. Nevertheless, defendant told Haw he would waive a preliminary hearing, but he did not go to the office of the Justice of the Peace to actually waive the preliminary hearing. Defend-

ant's brother Frank was permitted to see defendant at any time. He came to the jail to see him every day from about June 27 until July 23, and on some days he would see the defendant twice a day. He was trying to employ counsel and to get money for that purpose. On July 12, defendant first appeared in the Circuit Court before Judge Frank Kelly. He still did not have an attorney and he says that he asked for a continuance but it was not granted. The judge told the defendant that he would give him until July 15 to employ an attorney. Then on July 16 he again appeared in the Circuit Court and the judge asked whether he had an attorney and he advised that he did not. The judge then asked if the defendant wanted an attorney appointed. Defendant replied that it looked like that was the only way he would get one. The court then appointed William Grissom.

Defendant says that Grissom came and talked to him and his brother in the jury room that afternoon or evening and that Grissom stated that defendant had a bad case and if he did not hang, Grissom would be surprised. Grissom remarked that the only way he could help defendant was if he pleaded guilty. Defendant replied that he did not want to plead guilty, and Grissom remarked that it was his only hope. Grissom did not ask what occurred on the night of the alleged offense, but defendant gave him the names of several witnesses (five, he thought). When asked whether Grissom saw them, defendant said, "There was nothing to show that he ever did."

Defendant further testified that after this conference with Grissom, his brother Frank went to Judge Kelly and asked that Grissom be disqualified. The next day, John Fletcher showed up with Bill Grissom. He said that Grissom still did all the talking and that he still urged the defendant to plead guilty. Defendant then gave the names of witnesses to the two of them but neither seemed interested.

Defendant next saw Grissom on July 21 and Grissom still urged him to plead guilty

and avoid being hung. He then gave in and they went before Judge Kelly. The judge asked him if he wanted to enter a plea of guilty, and he said yes, and the judge then indicated he would defer sentencing until August 5.

Defendant testified that the Prosecuting Attorney never talked to him about entering a plea of guilty, and that he was never threatened or abused or promised anything by the Prosecuting Attorney, by Sheriff Walter Beck, or by Judge Kelly. However, the jailer, who he said was a Mr. Lynn, talked to him and told him that he ought to plead guilty and that the defendant would only be in prison five or six years and the jailer then would get him out on parole.

Defendant also said that the range of punishment on first degree murder was not explained to him and that he didn't know what he was pleading guilty to. On cross-examination, in reciting the basis of his contention that his constitutional rights were violated, defendant stated: "No, I wouldn't have pled guilty if I wasn't guilty. I wasn't guilty until I was proved guilty. It was under coercion; that is the only reason I pled guilty, was under coercion and threats and knowing I was fouled in every way, I had two inadequate attorneys, unqualified to handle criminal cases."

Defendant's only other witness was his brother Frank. He told of seeing defendant frequently at the jail and of his attempts to obtain private counsel for the defendant. He was present when Judge Kelly appointed Mr. Grissom as counsel and he and his brother then talked with Mr. Grissom. He said that Grissom wanted defendant to plead guilty and defendant did not want to, and that personally he did not know what to tell defendant to do. Whereas defendant testified that Grissom did not inquire about what had happened and did not ask about witnesses, Frank Crosswhite testified that Mr. Grissom did ask the defendant about the case and about

what had happened (but didn't go into detail), and that Grissom also asked about witnesses and defendant told him whom he wanted. Frank did not know whether Grissom ever talked to these witnesses.

Frank Crosswhite also testified that, so far as he knew, no one had coerced the defendant. On July 21 the defendant told him that he was going to plead guilty. Frank stated that prior to that the two of them had talked about it and decided that this was the best thing to do.

The State called James Haw, an attorney at Charleston, who was Prosecuting Attorney in 1937. He remembered going to the scene of the murder the evening of June 25, 1937, and that he saw the defendant the next morning in the Sheriff's office. He saw him at that time to arrange for him to be at the Coroner's hearing, although the defendant did not testify at the Coroner's hearing. Mr. Haw stated that subsequently he explained to defendant what a preliminary hearing is and what defendant could do, and that he could have witnesses brought in, but that the defendant waived a preliminary hearing. Mr. Haw said that the defendant was taken before Owen Cook, the Justice of the Peace, on June 29 to waive the preliminary hearing.

On July 16, when the defendant was in Circuit Court the second time and still did not have privately employed counsel, Judge Kelly asked the defendant if he wanted an attorney, and offered to appoint one if he could not hire one. As a result of the discussion, Judge Kelly did appoint both Mr. Grissom and Mr. Fletcher. This was done on July 16 and the men were not appointed on successive days, as defendant testified. Mr. Haw testified that both men were competent to try murder cases and to advise the defendant, and he mentioned that Mr. Grissom was forceful and knew his duty to his client and that no one ran over him.

Mr. Haw also testified that Judge Kelly told the defendant the range of punish-

ment on a charge of murder in the first degree before he entered his plea of guilty, and that the defendant was fully advised of his rights by the court.

Another witness called by the State was Walter Beck, who was the Sheriff of Mississippi County in 1937. He did not remember many details about the case, but did testify that the defendant was not promised anything to plead guilty, that he was not abused in any way and that he was permitted visitors, including his brother, at any time. Mr. Beck testified that Vernon Brooks was the jailer at that time, not a Mr. Lynn.

The record discloses that Owen Cook, the Justice of the Peace, was deceased at the time of the trial, that both Judge Kelly and Mr. Grissom had been dead for several years, and that Mr. Fletcher, then eighty-three, was still living but in bad health.

On May 31, 1967, Judge Craig overruled the defendant's motion to vacate and made various findings. He found that the defendant was not denied a preliminary hearing, that the defendant was not mistreated, that the defendant was represented by two competent attorneys, that the defendant was competent and cooperative with the attorneys, that the constitutional rights of the defendant were not violated and that he received due process and equal protection of the law.

■ At the outset, we observe that the burden of proving ground for relief rests on the prisoner, Supreme Court Rule 27.26 (f), and that on appeal our review is limited "to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous," Supreme Court Rule 27.26(j). Prior to the amendment of Rule 27.26, effective September 1, 1967, Supreme Court Rule 28.05 provided for de novo appellate review in proceedings under Rule 27.26. However, Su-

preme Court Rule 28.05 was repealed, effective September 1, 1967, and the review provided by Supreme Court Rule 27.26(j) was substituted. The appellate review thus established corresponds to the appellate review of federal post convictions under § 2255, Title 28, U.S.C. Clearly, this is not a de novo review. Rather, the findings of the trial court are presumptively correct and are to be sustained unless clearly erroneous.[1] Amer v. United States, 8 Cir., 367 F.2d 803; Drummond v. United States, 8 Cir., 350 F.2d 983; Burge v. United States, 8 Cir., 332 F.2d 171. An excellent statement describing the "clearly erroneous" type of review made in the federal courts and contemplated by our Rule 27.26 (j) is contained in Clayton v. United States, 8 Cir., 302 F.2d 30, 35:

"From the foregoing résumé it plainly appears that this Section 2255 proceeding (civil in nature, Taylor v. United States, 8 Cir., 229 F.2d 826, cert. den. 351 U.S. 986, 76 S.Ct. 1055, 100 L.Ed. 1500), presented an issue of fact for the trial court, namely, whether appellant was 'competent' on October 10 and on October 24, 1958, * * *. It is equally manifest that on this appeal the narrow question is whether the findings of the trial court are clearly erroneous or were induced by an erroneous view of the law. 'The findings of the court are presumptively correct and will not be set aside unless clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.' Lipscomb v. United States, 8 Cir., 209 F. 2d 831, 834, 835, cert. den. 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105."

Judge Matthes then proceeds to further define or explain "clearly erroneous" by a quotation from United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, as follows: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is

1. This presupposes, of course, that the trial court has conducted an evidentiary hearing when required by Rule 27.26 and that it has made the necessary findings and conclusions pursuant to Rule 27.26(i).

left with the definite and firm conviction that a mistake has been committed."

We have examined the transcript and have concluded that there is ample basis for the findings and judgment of the trial court and that the same are not clearly erroneous.

■ On the issue relating to the preliminary hearing, the defendant testified that nobody had explained to him about a preliminary hearing, that he did not know what it was, and that Mr. Haw did not explain it to him. However, James Haw, the Prosecuting Attorney, testified that he did explain all about a preliminary hearing and the defendant's rights before the defendant agreed to waive the preliminary. The defendant stated that he was not taken before the Justice of the Peace, but he was contradicted on this by Mr. Haw, who testified that he was taken before the Justice of the Peace, and, of course, the record entry so indicated. The credibility of the witnesses was for the trial court to determine.

■ Defendant also asserts that he had a constitutional right to counsel at his preliminary hearing, citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799, 93 A.L.R.2d 733; Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, and White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193. This court has decided on several occasions that the preliminary hearing is not a critical stage in Missouri and that there is no absolute requirement of counsel at the preliminary hearing. State v. Owens, Mo., 391 S.W.2d 248; State v. Turley, Mo., 416 S.W.2d 75. Nothing appears from this record to show that defendant was prejudiced by a lack of counsel at that time.

■ On the issue of competency of counsel, the defendant claimed that his attorneys did not ask anything about what occurred and did nothing about seeing witnesses and simply tried to persuade the defendant to plead guilty. However, his brother testified that Mr. Grissom did inquire about what had occurred and did inquire about witnesses and the names were given to him. The brother testified that he did not know whether the attorneys ever saw the witnesses, and all the defendant could say about that was that there was nothing to indicate that they had seen the witnesses. The record does not contain proof that the attorneys did not talk to the witnesses whose names were given to them, all of whom, of course, were residents of that county. Defendant's claim of incompetence of the attorneys is based on his assertion that they did not see witnesses or inquire about the case and simply tried to persuade him to plead guilty. On the other hand, James Haw testified that both men were competent and could and did handle this type of case. The fact that they may have urged the defendant to enter a plea of guilty and avoid the possibility of being hanged is not necessarily evidence of incompetence. If the defendant was guilty of murder in the first degree, there were only two possible punishments, death or life imprisonment, and he received the lesser punishment on a plea of guilty. In a first degree murder case, the advice given could have been good advice. Defendant did not sustain his burden of proving incompetency of counsel.

With reference to the claim that his plea was coerced, the evidence is not at all convincing. All of the evidence was that defendant was not threatened or mistreated in any way. The Sheriff, the Prosecuting Attorney and the Judge did not even discuss a plea of guilty with defendant. He was permitted to have visitors at any time. Defendant's brother, Frank, testified that so far as he knew defendant was not coerced by anyone. The only evidence offered by defendant was his statement that a jailer by the name of Lynn told him that he ought to plead guilty to avoid being hanged, and that if he did, the jailer would attempt to get him paroled after five or six years. The testimony of Sheriff

Beck shows that the jailer was Vernon Brooks, not a Mr. Lynn. This evidence did not sustain defendant's burden of showing his plea was coerced.

Finally, the defendant claimed that his plea of guilty was not entered of his own free will. To the contrary, the testimony of defendant's brother indicates that he and the defendant discussed what the defendant should do and that the two of them had concluded that the best thing for defendant to do was to enter a plea of guilty, and that this was done before the plea was entered on July 21. Furthermore, Mr. Haw testified that Judge Kelly did explain the range of punishment and the rights of the defendant. The defendant says that his attorneys urged him to enter a plea of guilty but does not claim that the attorneys coerced him into so doing, and the trial court certainly was justified in finding that the plea was not coerced and that the defendant's constitutional rights were not violated.

Apparently, all available evidence relating to these questions was introduced at the evidentiary hearing held on April 11, 1967. Many of the principals have died during the intervening thirty years. One of them, John Fletcher, was in poor health so that he was not used as a witness, but apparently the other persons still living who had any knowledge of the matter testified. There is nothing in the record to indicate the existence of any other persons who would have any knowledge about the matter. Hence, it would appear that the record now before us contains all the information which is available.

While it would have been desirable that the findings and conclusions of the trial court be somewhat more detailed, they do dispose of the issues raised and are supported by the evidence introduced. They are not clearly erroneous.

The judgment is affirmed.

All of the Judges concur.