Sherman ANDERSON, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 57263.

Supreme Court of Missouri,
Division No. 2.

Dec. 11, 1972.

**456**

Harry G. Neill, Jr. and James M. Daly, St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

HERBERT K. MOSS, Special Judge.

This is an appeal from an order entered on August 20, 1971, following an evidentiary hearing on June 23, 1971, by the Circuit Court for the City of St. Louis, overruling appellant's Motion to Vacate Judgment and Sentence under Rule 27.26, V.A.M.R.

We have jurisdiction because this appeal was pending here on January 1, 1972, the effective date of the amendment to Section 3, Article V, Constitution of Missouri, V.A.M.S.

The facts are as follows: Appellant was arrested September 24, 1969, and charged with the crimes below described. A staff member of the Public Defender's Office first interviewed appellant on September 29, 1969. In November, 1969, attorney Edward Vancil of that staff first interviewed appellant.

On June 1, 1970, appellant in person and with counsel, Mr. Edward Vancil of the Public Defender Staff, in the Circuit Court for the City of St. Louis in Cause No. 2387–R, entered a plea of guilty to the charge of forcible rape. Formal sentencing was deferred to June 26, 1970, for the purpose of allowing a pre-sentence investigation to be made. Sentencing was continued on motion of appellant's counsel to July 13, 1970, and on said date the sentencing was again continued to August 28, 1970. On August 28, 1970, appellant was sentenced, on his plea of guilty to the charge of forcible rape, to be imprisoned in the custody of the Department of Corrections of the State of Missouri for a period of twenty-five years.

On August 28, 1970, in Cause No. 2388–R, appellant, in the Circuit Court for the City of St. Louis in proper person and with counsel, Mr. Edward Vancil, entered a plea of guilty to the charge of robbery in the first degree by means of a dangerous and deadly weapon. On August 28, 1970, appellant was sentenced to five years imprisonment in the custody of the Department of Corrections on the robbery charge, said sentence to run concurrently with the sentence imposed in Cause No. 2387–R, credit being given for jail time.

On December 28, 1970, appellant filed a Pro Se Motion to Vacate Judgment and Sentence, to-wit:

"Movant was denied the effective assistance of counsel in that:

"(1) Court appointed counsel failed to conduct an independent investigation on the case. (2) He failed to interview the complaining witness, despite the fact movant was never identified by the victim. (3) During the year movant was in jail counsel spoke to movant on 4 or 5 occasions (sic) in a very cursory manner with no definite aim as to how the defense was to be conducted. Movant reiterated certain facts about witnesses that could prove he did not commit the crime charged in the indictment; counsel failed his duty as an officer of the court by not seeking them out to obtain a statement from them. (4) In addition (sic) counsel incorrectly advised this 20 year old movant that he had spoken to his mother and even she felt it best he enter a plea of guilty.

"(5) Furthermore, counsel stated a co-defendant had received a 45 year sentence upon taking the case to trial, and in his opinion movant would also; (6) that he (counsel) could not hope to win the case. (7) that he was unable to locate the victim and take a deposition

from her! That due to the facts and circumstances of the case, he advised a guilty plea, (8) but that he would, at the end of two years, either help movant obtain a parole or get the case re-opened for reconsideration of a lesser penalty.

"(9) Due to the coercing effects of scaring this 20 year old movant into believing he had no chance at a trial, (10) that the alleged victim could not even be located for a deposition; (11) his failure to interview two witnesses that had evidence showing movant was innocent; his misrepresentation of the case to movant and movant's mother, coupled with the fact movant has never been identified by the victim, clearly indicates movant was denied the effective assistance of counsel embodied in the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution."

On June 23, 1971, an evidentiary hearing was held on appellant's Motion to Vacate in the Circuit Court of the City of St. Louis.

The trial court made the following findings of fact pertinent to this appeal and conclusions of law:

"The Court finds that defendant's counsel, Edward Vancil, was a member of the Public Defender's staff and that he had been a member for at least eighteen months prior to his representation of defendant. The Court finds that defendant's counsel had numerous conferences with the defendant and with defendant's mother and that he discussed with defendant all possible defenses to the charges against defendant. The Court finds that defendant's counsel did conduct an investigation of the facts and the charges against defendant. The Court further finds that he took photos of the scene.

"The Court finds that defendant's counsel did not take the deposition of the prosecuting witness because there were no funds with which to take such deposition. The Court finds that [defendant's counsel] did not tell defendant he could not take the deposition because he was unable to find the witness for the purpose of taking her deposition or a statement from her. The Court finds that the prosecuting witness would not talk to the attorney for defendant.

"The Court finds that defendant's attorney attended the trial of a co-defendant; that the attorney heard the testimony of the prosecuting witness regarding the actions of Sherman Anderson; that he made notes of the prosecuting witness' testimony; that he told defendant that the prosecuting witness implicated him in the crime.

"The Court finds that defendant's counsel obtained a police report of the incident; that he talked to witnesses whose names were given to him by the defendant and defendant's mother on the issue of defendant's character.

"At the time of the entries of the pleas of guilty the Court directed numerous questions to defendant. Among the questions and answers thereto were the following:

'Q Did you talk to Mr. Vancil prior to this morning on this matter? A Yes, sir.'

"The Court finds that defendant's counsel conferred with defendant approximately twelve times prior to the appearance in court of defendant at which time defendant entered his pleas of guilty.

"The Court finds that defendant's attorney did confer with defendant's mother; that defendant's [mother] did express her feeling that it was best that defendant enter pleas of guilty.

"The Court finds that defendant's counsel did not tell defendant that he would get fifty to sixty years if he went to trial. The Court finds that defend-

ant's counsel did not tell defendant that he could not hope to win the case.

"The Court finds that defendant's attorney did not tell defendant that at the end of two years he would help defendant get a parole or get the case reopened for consideration of a lesser penalty.

"The defendant has not included as a ground for post conviction relief the question of the voluntariness of his pleas of guilty. The alleged facts set out by defendant in support of the one ground included in his motion, however, would seem to inferentially raise this additional ground. The Court finds that in taking the plea of defendant to the charge of Rape the Court asked the following questions and received the following answers from defendant:

'Q Everything I have said you understand; is that correct, sir? A Yes, sir.

'Q Now, I must know, Mr. Anderson, have you been threatened, beaten, or mistreated, or any way coerced into entering his plea of guilty? 'A No, sir.

'Q You have not. Are you pleading guilty because you are guilty and for no other reason—let me ask you this way. I am asking you since you have indicated you have not been beaten, mistreated, or coerced to plead guilty, I would ask you because you are pleading guilty is because you are guilty and for no other reason? A Yes, sir.

'Q Do you understand that, sir? A Yes, I do.

'Q Let me ask you this. Have you been promised anything to plead guilty or are you pleading guilty because you are guilty?

'A I am pleading guilty because I am guilty.

'Q Not because of any promise or threat; is that correct sir? A Yes.'

"The Court further finds on the issue of competency of counsel that at the time defendant entered pleas of guilty the Court asked the defendant the following questions and received the following answers:

'Q With regard to your discussion with Mr. Vancil, are you satisfied with the services that he has rendered you in this matter? A Yes, sir.'

'Q Are you satisfied with the advice that he gave to you in this matter? A Yes, sir.'

"The burden of proving the allegations in the motion under Supreme Court Rule 27.26 is on defendant. The defendant has not carried this burden and is not entitled to relief under Supreme Court Rule 27.26. Defendant's motion is denied."

Appellant argues the trial court erred in denying the Motion to Vacate for the following:

". . . in finding that Appellant's counsel did not conduct an investigation of facts and charges against Appellant; in finding that Appellant's counsel talked to certain witnesses whose names were given to him by Appellant; in finding that the reason for Appellant's counsel not taking the deposition of the prosecuting witness was because there were no funds with which to take said depositions; in finding that Appellant's attorney attended a trial of a co-defendant; that the attorney heard the testimony of the prosecuting witness regarding the actions of Sherman Anderson; that the prosecutrix refused to talk to Appellant's counsel; that he made notes of the prosecuting witness's testimony; and that he told defendant that the prosecuting witness implicated him in the crime; in finding that Appellant's counsel did not tell Appellant that he could not hope to win the case; and in so doing, Appellant was denied his constitutional right to effective assistance of counsel as guaranteed him by the Sixth and Fourteenth Amendments to the Constitution of the United States."

Appellant summarizes his argument as follows:

" . . . He failed in his duty as Appellant's advocate, in that he failed to thoroughly investigate his client's case, failed to routinely and frequently consult with his client, failed to take any depositions or statements from any individual having knowledge of the facts, and, in short, prejudiced his client's constitutional right to effective assistance of counsel."

At the evidentiary hearing, appellant and attorney, Edward Charles Vancil, were the only two witnesses who testified.

The transcript of the evidentiary hearing reflects the following facts:

In Cause No. 2387–R, on June 1, 1970, appellant and his counsel entered a plea of guilty on the rape charge. At the time appellant was twenty years of age; had a ninth grade education. His mother was present in the courtroom. The assistant circuit attorney stated in open court the State's evidence would establish the victim was taken into the automobile operated by the appellant and his three friends, Ollie Thompson, Robert Allan, and Ricky Peterson, and she was thereafter individually raped by appellant and his three associates at each of two different street addresses. Appellant at the taking of the plea stated he had advised both his father and his mother of his intention to plead guilty. With respect to the robbery charge, Cause No. 2388–R, the assistant circuit attorney in open court stated the State's evidence would establish the appellant and his *two* associates, Ollie Thompson and Robert Allan, while displaying weapons, removed money, to-wit: forty-five dollars, from the person of the victim.

At the evidentiary hearing attorney, Richard Daly, for appellant stated in preparation for this hearing he had learned the prosecuting witness, now married, was now in Texas and upon medical advice and upon insistence of her parents, she did not wish to be confronted with any adversary hearings in a court of law. Further, that Mr. Daly had reviewed the transcript of testimony in the trial of Ollie Thompson, one of appellant's accomplices.

At the evidentiary hearing appellant sought to develop that he heard a Detective Saunders say the victim had stated one of the boys present did not participate but tried to help her; that Ricky Peterson who was released made a statement appellant had nothing to do with the crime; that Vancil told him he thought the defense was false. Appellant testified he repeatedly requested his attorney to take the deposition of the prosecuting witness.

■ Attorney Vancil testified as follows: he had ten or twelve conferences with appellant prior to entry of plea of guilty; that he informed appellant he could not take the deposition of the victim as the Public Defender's Office had no funds for such purpose; that he attended a part of the trial of Ollie Thompson, during which trial he heard parts of the testimony of the victim implicating appellant; that he so advised appellant; that he had unsuccessfully tried to locate the victim by the use of telephone only; that he reviewed the substantive police report of the offense and discussed same with appellant; that he took photographs of the area where one of the offenses occurred; that he filed a Motion for Mental Examination of appellant which was sustained, and also a Motion to Suppress; that preparatory to trial he interviewed three or four character witnesses; that he conferred with the Public Defender trial lawyer who defended the Ollie Thompson case; that he conferred with the assistant circuit attorney to learn of any possible defense; that he spent a total of twenty-five or thirty hours in representing the appellant; that in his opinion based on the evidence the jury would have found appellant guilty; that appellant had asked he interview or depose Ricky Peterson, who was confined at Boonville, but he did not do so for "unavailability" and on account of the "money factor"; that appel-

lant told him he was not "good for these crimes"; that appellant had admitted being present but did not participate but was "there with the other defendants in the case."[1]

 The findings of fact and conclusions of law are presumed to be correct unless they are clearly erroneous. Crosswhite v. State, 426 S.W.2d 67 (Mo.1968). Findings of fact and conclusions of law are clearly erroneous only if upon review of the entire record the Court is left with the definite and firm impression that a mistake has been made. Crosswhite v. State, supra.

This Court, in Smith v. State of Missouri, 473 S.W.2d 719, l. c. 722 (1971), in holding failure of accused's trial counsel to file motions to suppress accused's arrest and evidence seized at time of accused's apprehension, did not deny or abrogate accused's rights to fair trial, cited the language, as appropriate and persuasive, in Robinson v. United States (8 Cir. 1971), 448 F.2d 1255, l. c. 1256:

 "Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel. (Citing cases.) In order to assert a Sixth Amendment infirmity on this ground, the circumstances must demonstrate that which amounts to a lawyer's deliberate abdication of this ethical duty to his client. There must be such conscious conduct as to render pretextual an attorney's legal obligation to fairly represent the defendant."

Appellant relies heavily on Goodwin v. Swenson, 287 F.Supp. 166 (W.D.Mo.1968), cases cited therein and language at page 176: "An accused's right to effective assistance obviously is not limited to the court room. His counsel must make reasonable investigation of the facts and of the applicable law."

It should be noted however at page 186 the Court stated: "The facts of the case at bar present a more extreme factual situation than any presented in the cases just discussed. Defense counsel's failure in this case to make any sort of investigation resulted in the concealment of a medical diagnosis of psychosis made the very day that defendant gave the police the oral statement which was partially responsible for his death sentence."

Appellant also relies on Coles v. Peyton, 389 F.2d 224 (4th Cir. 1968). Again the factual situation is extreme. Co-counsel, Public Defenders, were appointed to represent petitioner and fifty-seven other defendants in other felony cases scheduled to be tried in the then current term of court. Counsel interviewed petitioner three times; once for as long as twenty minutes, again for a lesser period and a third time briefly on the day of trial. Counsel admitted that although the element of penetration was an issue they made no investigation of the reputation of the prosecutrix, nor examine the medical report of prosecutrix, nor interview her male companion, nor interview an identified witness, nor explain the elements of the crime to petitioner. "In short, counsel did no more than interview petitioner on the three occasions previously alluded to and to accept the statements he made to them during the interview." (389 F.2d 224, 226.)

1. At the time the pleas of guilty were entered the assistant circuit attorney stated the automobile used was operated by the appellant and that the frist series of rapes were committed at O'Fallon Park and the second series at 3631 Herbert. Presence of one at commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting. State v. Reed (Mo.1970), 453 S.W.2d 946. See also, Vernon's Annotated Mo. Statutes Section 556.170.

This Court now rules the facts in Coles and Goodwin, supra, to be distinguishable from those in the case at bar.

■ There is a presumption of competency of counsel and a strong showing beyond mere conclusory allegations must be made before that presumption can be overcome. Kress v. United States, 411 F.2d 16 (8th Cir., 1969).

■ We now rule the findings of fact and conclusions of law as found by the trial court are not clearly erroneous.

Judgment affirmed.

All of the Judges concur.