Charles William SWINK, Jr., Movant-
Appellant,

v.

STATE of Missouri, Respondent.

No. 57631.

Supreme Court of Missouri,
Division No. 1.

Feb. 11, 1974.

Robert T. Ebert, Clayton, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Assist. Atty. Gen., St. Louis, for respondents.

DONNELLY, Chief Justice.

Appellant was charged in the Circuit Court of the City of St. Louis with the robbery of Robert Miller on August 16, 1970, and with the robbery of Gerald Paluszek on August 22, 1970.

On October 1, 1970, appellant entered pleas of guilty and was sentenced to six years on each charge with the sentences to run concurrently.

On June 7, 1971, appellant filed in the Circuit Court of the City of St. Louis his motion to vacate under Rule 27.26, V.A. M.R., and an evidentiary hearing was held on October 22, 1971. The motion to vacate was denied and an appeal to this Court followed.

The appeal having been taken to this Court prior to January 1, 1972, the effective date of new Article V of the Constitution, we have jurisdiction pursuant to then Article V, § 3 of the Missouri Constitution, V.A.M.S.

Appellant first asserts that the trial court erred in finding that appellant "fully explained the facts of his case to his attorney."

At the evidentiary hearing, appellant testified as follows:

"Q Did you discuss with your attorney the facts of the charges that were brought against you? A After he told me that an attorney would be appointed for me he asked would five years be too much.

"Q Now, I will get to that. What I want to know is, Was that the first thing that he talked about the case was the amount of time?

"A No, it wasn't.

"Q Did he ask you what happened or did he go over the charges? A Yes, he asked what happened in the case, you know, and I explained it to the best of my knowledge what had happened on both charges."

Appellant next asserts that the trial court erred in finding that appellant "was not threatened by the Circuit Attorney of St. Louis."

At the evidentiary hearing, appellant testified as follows:

"Q Did Mr. Ryan talk to you about your case?

"A Yes, he did.

"Q Was this in the presence of Mr. Hubel?

"A He did.

"Q Was the sheriff also there? A He was.

"Q What did Mr. Ryan indicate to you? Did he say anything to you, that you could get a lot more punishment than what he might offer?

"A Yes, he did.

"Q What did he say you were faced with? A I forget what he said. It was marked more than six. I think it was either eight or twelve, one of the two.

"Q What did that indicate to you when he said the case was marked? A That meant this is what the State—the least amount of time the State had recommended for me to get.

"Q Did Mr. Ryan make any threats or inducements to you that if you didn't take the recommendation, he would ask for the maximum penalty?

"A What he said a little later on in our discussion, he told me—he said, 'You don't have to take anything.' He said, 'You can go to trial on both of them.' He said, 'You will probably plead one and you are going to lose the other one.'

"Q Let me ask you, What did you feel as you were sitting there with Mr. Hubel, with the Circuit Attorney himself interviewing you, in the accepting a plea of guilty on a reduced amount of years?

"A I just felt he was telling me the truth.

"Q So you felt that the man wasn't trying to force you into pleading guilty, that he was trying to explain the facts of life to you?

"A In a sense he was telling me the State's recommendation was a lot less than what I would have got if I had gone to trial with it.

"Q Now, did Mr. Hubel join in with this discussion with the Circuit Attorney? A No, he didn't.

"Q How long did this discussion take place there in that room? A Approximately fifteen—twenty minutes.

"Q Did the Circuit Attorney say anything to you that if you didn't accept a lesser amount of years than what their file was marked for, that they were going to see to it that you would get more? Did they ever?

"A Yes, he did.

"Q Did he ever threaten you with that? A Yes, he did.

"Q Was that in Mr. Hubel's presence? A Yes.

"Q Were you scared at that time? A I was scared from the beginning, really, from what the police officers had told me.

"Q So after this discussion was there an offer made to you if you would plead guilty as to what the Circuit Attorney would recommend? Was there an offer made in your presence?

"A Yes, I believe it was eight years. But, anyway, after talking and discussing we finally got down to six.

"Q What did you say when they got down to six?

"A I told him that I would plead guilty for six years running concurrently on both charges."

Appellant next asserts that the trial court erred in finding that "appellant stated he had no defenses to the charge."

At the evidentiary hearing, appellant testified as follows:

"Q All right. Now, can you tell us any other matters that you want to bring up at this time to the Judge? Now is the time.

"A The fact that my plea of guilty was just to get the six years to keep from getting any more. I was just scared getting any more time.

"Q Well, did you feel—I will get back to that again—did you feel at the time that you pleaded guilty and accepted the six years that you had possibility of some good defenses to the charges, that you were not guilty of them?

"A I didn't have any. I didn't have any defense, just the fact that, well, with my record it would just be my word against these guys' word and probably would have ended up, what would happen, I would have been found guilty."

Appellant finally asserts that the trial court erred "in making no finding regarding the representation afforded appellant when the evidence showed that in fact appellant's attorney afforded appellant no representation whatsoever."

The findings of the trial court read, in part, as follows:

"The Court finds that the defendant conferred with his attorney, George Hubel, a member of the Public Defender's office, on the day that he was to be arraigned; that he explained fully to his attorney the facts in the matter.

\*     \*     \*     \*     \*     \*

"The Court finds that a discussion between the Circuit Attorney, the defendant and his counsel was held prior to the arraignment; that at said discussion the defendant informed his attorney that he wished to plead guilty and that he would accept a sentence of six years.

\*     \*     \*     \*     \*     \*

"The Court finds that at said conference between the Circuit Attorney and his attorney the defendant was not threatened in any way by the Circuit Attorney; that the Circuit Attorney, in fact, stated to defendant that he did not have to accept any offer of a term of years suggested by the Circuit Attorney but could have a trial. The Court finds that defendant's counsel did not urge him to accept the sentence of six years offered by the Circuit Attorney but that, in fact, defendant decided to accept it on his own initiative.

\*     \*     \*     \*     \*     \*

"The Court finds that there is no evidence that defendant's attorney made any arrangements behind his back for a 'deal' with the state. The Court finds that the defendant testified and the Court finds that his attorney, George Hubel, said nothing that was not in defendant's best interest.

"The Court finds that defendant's attorney explained to defendant the effects of a trial by jury and that of pleading guilty; that upon said explanation the defendant informed his counsel that he wished to enter a plea of guilty.

\*     \*     \*     \*     \*     \*

"The Court finds that defendant was granted a preliminary hearing and that he was represented by counsel at said hearing.

"The Court finds that the defendant at no time indicated to the Circuit Attorney or any other judge or to his attorney that he had a good defense to the charge.

"The Court finds that the attorney for the defendant was made aware of the information regarding the matter contained in the file of the Circuit Attorney prior to the defendant's plea of guilty.

"The Court finds that during the conference of George Hubel with the defendant he had discussed the range of punishment for the charges, the probabilities as to the results of a trial by jury, and that on this basis he recom-

mended that defendant enter pleas of guilty.

"The Court finds that the pleas of guilty to the charges entered by defendant were voluntarily and intelligently made and with full knowledge of his legal rights made known to him by his attorney and by the Court in accepting the plea."

The findings of the trial court are supported by the evidence and are not clearly erroneous. We do not believe that a mistake has been committed. Crosswhite v. State, 426 S.W.2d 67, 71 (Mo.1968).

The judgment is affirmed.

BARDGETT, P. J., and HOLMAN, J., concur.

SEILER, J., not sitting.