

# SUPREME COURT OF MISSOURI
## en banc

SHAWN H. FLAHERTY, ) *Opinion issued June 18, 2024*
 )
 Appellant, )
 )
v. ) No. SC100292
 )
STATE OF MISSOURI, )
 )
 Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
The Honorable Patrick K. Robb, Judge

Following a violent altercation with his wife, Shawn Flaherty was convicted of one count of second-degree domestic assault under section 565.073 and one count of armed criminal action under section 571.015.[1]  Flaherty's convictions were affirmed on direct appeal.  He then filed a motion for postconviction relief pursuant to Rule 29.15, arguing his trial counsel was ineffective for failing to request a lesser-included instruction for fourth-degree domestic assault under section 565.076.1(2).  After an evidentiary hearing, the motion court overruled Flaherty's motion.  Flaherty appeals, and, because the motion court's findings were not clearly erroneous, the motion court's judgment is affirmed.

---

[1]  All statutory references are to RSMo 2016 unless otherwise noted.

## Background

In June 2018, Flaherty and his wife were involved in a heated dispute. During the argument, Flaherty retrieved from his backpack a Hawes Western Marshall, single-action, .44 magnum revolver. Flaherty brandished the revolver and told his wife "if he couldn't have her then no one could." Flaherty's son and his friend were present, and Flaherty's son threatened to call the police. Flaherty told his son, if he called the police, they were "going to all go out with a bucket of bullets." Flaherty's daughter came home during the dispute and attempted to disarm her father. During that struggle, Flaherty's revolver discharged, and the bullet struck Flaherty's wife in the knee. Flaherty was arrested and charged with first-degree domestic assault and armed criminal action.

At trial, Flaherty's counsel focused on proving the shooting was an accident and not an intentional act. Trial counsel presented evidence from a firearms expert showing Flaherty's revolver was easy to discharge unintentionally due to the minimal amount of pressure required to pull the trigger and the very short distance the trigger had to travel to fire the weapon. Counsel also presented evidence that Flaherty might not have been aware his finger was on the trigger during the struggle with his daughter and that the struggle might have caused the revolver's hammer to cock unintentionally. Finally, Flaherty's counsel sought – and the circuit court gave – an instruction for the lesser-included offense of second-degree domestic assault. In closing argument, counsel stressed to the jury it had the option of finding Flaherty guilty of this lesser offense. Flaherty's trial counsel did not request instructions for any other lesser-included offenses.

The jury found Flaherty guilty of the lesser-included offense of second-degree domestic assault and armed criminal action. The circuit court sentenced Flaherty to seven years for the assault count and three years for the armed criminal action count, with the sentences to run consecutively. Flaherty appealed, and the court of appeals affirmed. *State v. Flaherty*, 617 S.W.3d 525 (Mem) (Mo. App. 2021).

In May 2021, Flaherty timely filed a Rule 29.15 motion. The motion court appointed counsel for Flaherty, and counsel filed an amended Rule 29.15 motion. The amended motion argued Flaherty's trial counsel was constitutionally ineffective for failing to request an instruction for the lesser-included offense of fourth-degree domestic assault and requested an evidentiary hearing on that claim. At the evidentiary hearing, Flaherty's trial counsel testified she had pursued an accidental discharge defense based on the facts presented at trial. Counsel also testified she could not remember having a strategic reason for failing to request an instruction for fourth-degree domestic assault.

Following the evidentiary hearing, the motion court entered judgment overruling Flaherty's motion. The motion court found trial counsel's performance was constitutionally deficient for failing to request the instruction for fourth-degree domestic assault. The motion court denied relief, however, because it found trial counsel's deficient performance did not prejudice Flaherty. Flaherty appeals, and this Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

## Standard of Review

Rule 29.15(k) provides: "Appellate review of the trial court's action on the motion filed under this Rule 29.15 shall be limited to a determination of whether the

3

findings and conclusions of the trial court are clearly erroneous." Appellate courts

presume the motion court's findings are correct and a "judgment is clearly erroneous

when, in light of the entire record, the court is left with the definite and firm impression

that a mistake has been made." *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016)

(internal quotations omitted). As often happens, however, the foregoing standard of

review has been repeated so many times it is useful occasionally to revisit its context and

understand precisely what was meant by this "clearly erroneous" standard of review.

Prior to 1967, appellate courts reviewed postconviction decisions *de novo*.

*Crosswhite v. State*, 426 S.W.2d 67, 70 (Mo. banc 1968); Rule 28.05 (1966). In 1967,

however, this Court amended the postconviction rule (then, Rule 27.26) to provide that

appellate review is "limited to a determination of whether the findings, conclusions and

judgment of the trial court are clearly erroneous." *Crosswhite*, 426 S.W.2d at 70 (quoting

then Rule 27.26(j) (effective Sept. 1, 1967)).[2] The purpose of that change was to mirror

more closely the standard of review in federal postconviction matters. *Id*. This Court

explained:

> An excellent statement describing the "clearly erroneous" type of review
> made in the federal courts and contemplated by our Rule 27.26(j) is
> contained in *Clayton v. United States*, 8 Cir., 302 F.2d 30, 35:
>
>> "From the foregoing resume it plainly appears that this Section 2255
>> proceeding (civil in nature, *Taylor v. United States*, 8 Cir., 229 F.2d
>> 826, cert. den. 351 U.S. 986, 76 S.Ct. 1055, 100 L.Ed. 1500),
>> presented an issue of fact for the trial court, namely, whether
>> appellant was 'competent' on October 10 and on October 24, 1958, *

---

[2]  Rule 27.26 was repealed in 1987 and replaced with Rules 24.035 and 29.15 (1988).
The "clearly erroneous" language in the prior Rule 27.26(j) was included in the new
Rules 24.035 and 29.15 and remains unchanged to this day.

* *. It is equally manifest that on this appeal the narrow question is whether the findings of the trial court ***are clearly erroneous or were induced by an erroneous view of the law***. 'The findings of the court are presumptively correct and will not be set aside unless clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.' *Lipscomb v. United States*, 8 Cir., 209 F.2d 831, 834, 835, cert. den. 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105."

Judge Matthes then proceeds to further define or explain "clearly erroneous" by a quotation from *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, as follows: "A finding is 'clearly erroneous' when ***although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed***."

*Id*. at 70-71 (alteration in original) (emphasis added).

As the emphasized portions make clear, *Crosswhite* holds that an appellate court can overturn the findings and conclusions of the motion court if: (1) they are the result of a mistake of law or (2) they are "clearly erroneous." *Id*. at 70. The former questions of law are reviewed *de novo* in these cases as in all others. *State ex rel. Dep't of Nat. Res. v. Fowler Land Co.*, 673 S.W.3d 462, 466 (Mo. banc 2023). Referring only to the latter, therefore, *Crosswhite* holds that a finding is clearly erroneous if, even though there was sufficient evidence for the motion court to make a finding, the appellate court is "left with a definite and firm conviction[3] that a mistake has been committed." *Crosswhite*, 426

---

[3] The articulation of the "clearly erroneous" standard of review announced in *Crosswhite* and borrowed from *United States Gypsum Co.* was routinely restated by this Court immediately thereafter. *See Bosler v. State*, 462 S.W.2d 768, 770 (Mo. 1971); *Burgess v. State*, 466 S.W.2d 673, 674 (Mo. 1971); *State v. Harris*, 467 S.W.2d 876, 880 (Mo. 1971). Then, in *Anderson v. State*, 487 S.W.2d 455 (Mo. 1972), this Court stated: "Findings of fact and conclusions of law are clearly erroneous only if upon review of the entire record the Court is left with the definite and firm ***impression*** that a mistake has been made." *Id*. at 460 (emphasis added). *Anderson* cites to *Crosswhite* immediately after this sentence, so it is clear no substantive change was intended by substituting the

S.W.2d at 71.  Finally, if an appellate court can overturn a finding even though there was sufficient evidence to support it, then it follows logically an appellate court can overturn a finding when there is no sufficient evidence to support it.

As a result, *Crosswhite* holds that an appellate court can overrule the motion court's judgment after an evidentiary hearing[4] if it is based on: (1) a mistake of law, (2) a factual finding for which there was insufficient evidence, or (3) a factual finding for which there was sufficient evidence but which the appellate court, nevertheless, finds was

---

word "impression" for the word "conviction."  *See also Knight v. State*, 491 S.W.2d 282, 284 (Mo. 1973) (using "impression" and citing to *Crosswhite*).  Instead, the change likely resulted from the author's desire to avoid using the word "conviction" with two distinct meanings (i.e., "judgment of guilt and sentence" and "firm belief or impression") in close proximity in the same opinion.  Over the years, this Court has been largely consistent in using the "impression" formulation, but, again, no substantive change from the "conviction" formulation in *Crosswhite* is (or ever was) intended.  In fact, appellate courts have continued to use the "conviction" formulation in other circumstances in which the "clearly erroneous" standard of review is used.  *See State v. McFadden*, 191 S.W.3d 648, 651 (Mo. banc 2006) ("A finding [regarding a *Batson* challenge] is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made."); *State v. Watkins*, 618 S.W.3d 265, 269 (Mo. App. 2021) ("A ruling [on a motion to suppress] is considered clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made.").  And individual authors occasionally introduce new formulations.  *See Reiker v. State*, 636 S.W.3d 626, 628 (Mo. App. 2021) ("This Court will find error [in a postconviction proceeding] only if, after review of the entire record, we have a definite and firm ***belief*** that a mistake has been made." (emphasis added)).  In substance, however, the explanation of the "clearly erroneous" standard of review provided in *Crosswhite* is as accurate today as it was when it was announced more than 50 years ago.

[4]  *Crosswhite* made clear that the standard of appellate review announced there applied only when the motion court holds an evidentiary hearing and makes the necessary findings and conclusions.  *Crosswhite*, 426 S.W.2d at 70 n.1.

6

clearly erroneous, i.e., the appellate court on the whole of the evidence is left with a definite and firm conviction that a mistake has been committed.

If the holding in *Crosswhite* sounds familiar all these years later, it should. Just four years after *Crosswhite*, this Court would adopt the ***same*** formulation – which originated from the standard of review for "suits of an equitable nature" – as the standard of review for ***all*** court-tried matters:

> Accordingly, appellate "review … as in suits of an equitable nature," as found in Rule 73.01[5], is construed to mean that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and ***with a firm belief that the decree or judgment is wrong***.

*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) (alteration in the original) (emphasis added). To avoid further confusion, this Court in *Murphy* noted the "use of the words *de novo* and clearly erroneous is no longer appropriate in appellate review of cases under Rule 73.01." *Id*.

So, the standard of review for postconviction matters is what Rule 29.15(k) and Rule 24.035(k) say it is, i.e., that "review of the trial court's action … shall be limited to a determination of whether the findings and conclusions of the trial court are clearly

---

5 The standard of review in Rule 73.01 discussed in *Murphy* was moved without change to Rule 84.13(d), which now provides: "(1) The court shall review the case upon both the law and the evidence as in suits of an equitable nature; (2) The Court shall give regard to the opportunity of the trial court to have judged the credibility of the witnesses."

erroneous." As *Crosswhite* makes clear, however, this includes *de novo* review for errors of law, rejection of factual findings for which there is no substantial evidence, and – in the rarest of cases – rejection of factual findings for which there may be substantial evidence but regarding which the reviewing court, nevertheless, on the entire record, is left with a definite and firm conviction (or impression) that a mistake has been made. In applying this standard, appellate courts should defer to the motion court's superior opportunity to judge the credibility of witnesses and recognize the "circuit court is entitled to believe all, part, or none of the evidence presented at the post-conviction hearing." *Driskill v. State*, 626 S.W.3d 212, 220 (Mo. banc 2021) (internal quotations omitted).

## Analysis

Flaherty's ineffective assistance of counsel claim is rooted in the differences among first-degree, second-degree, and fourth-degree domestic assault. Flaherty argues, in light of the unique circumstances of his case, that his trial counsel's failure to request an instruction for fourth-degree domestic assault was objectively unreasonable and resulted in prejudice because fourth-degree domestic assault is a misdemeanor and, had the jury been given that option, it is substantially likely the jury would have taken it. Not only does fourth-degree domestic assault carry the much lower penalty of a misdemeanor, but a conviction of that misdemeanor also cannot support a conviction for armed criminal action. § 571.015.1. As a result, had the jury found him guilty of fourth-degree domestic assault, Flaherty argues he would have faced no more than one year in jail rather than the consecutive seven- and three-year prison sentences he received.

8

Section 565.072.1 states an individual commits first-degree domestic assault if he or she "**knowingly** causes or attempts to cause **serious physical injury** to a domestic victim." (Emphasis added). A person acts with knowledge "[w]ith respect to a result of his or her conduct when he or she is aware that his or her conduct is practically certain to cause that result." § 562.016.3(2). To convict Flaherty of first-degree domestic assault, the state was required to prove Flaherty was aware his conduct with the firearm was practically certain to cause serious physical injury to his wife.

An individual commits second-degree domestic assault if he or she "**recklessly** causes **serious physical injury** to [a] domestic victim." § 565.073.1(2) (emphasis added). An individual acts with recklessness "when he or she consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4. At trial, Flaherty's counsel focused on an accidental discharge theory and, in support of that strategy, requested an instruction for second-degree domestic assault. The circuit court gave that instruction, and, ultimately, the jury found Flaherty guilty of second-degree domestic assault.

In his postconviction motion, Flaherty argues trial counsel provided ineffective assistance by failing to request an instruction for fourth-degree domestic assault. An individual commits fourth-degree domestic assault if he or she "**[w]ith criminal negligence** … causes **physical injury** to [a] domestic victim by means of a deadly weapon or dangerous instrument." § 565.076.1(2), RSMo Supp. 2017 (emphasis added). "A person 'acts with criminal negligence' when he or she fails to be aware of a

9

substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in that situation." § 562.016.5.

To be entitled to postconviction relief for ineffective assistance of counsel, "a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017). *Strickland* requires the movant to show that his or her "counsel's performance was deficient," and that counsel's deficient performance "prejudiced the defense[.]" *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Both deficient performance (i.e., the performance prong) and prejudice (i.e., the prejudice prong) "must be shown by a preponderance of the evidence … to prove ineffective assistance of counsel." *McFadden v. State*, 553 S.W.3d 289, 298 (Mo. banc 2018).

When the claim is that counsel was ineffective for failing to request a lesser-included offense instruction, the movant "must demonstrate the evidence would have required the trial court to submit the instruction had one been requested, that the decision not to request the instruction was not reasonable trial strategy, and that prejudice resulted." *Watson*, 520 S.W.3d at 435 (internal quotations omitted). "Even whe[n] the evidence supports the submission of a lesser-included offense instruction, [the movant] must still overcome the [*Strickland*] presumption that counsel's decision not to request the instruction was reasonable trial strategy." *Id.*

10

## I. Performance Prong

The motion court found Flaherty's trial counsel's performance was objectively unreasonable. This Court holds there was evidence from which the motion court could find that the evidence would have supported a fourth-degree instruction[6] and that the unique circumstances of this case were enough to overcome the strong presumption there was a reasonable trial strategy underlying counsel's decision not to request that instruction. Accordingly, the motion court's finding that counsel's performance was constitutionally deficient is not clearly erroneous.[7]

The performance prong of *Strickland* "calls for an inquiry into the ***objective*** reasonableness of counsel's performance, ***not counsel's subjective state of mind***." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (emphasis added). In evaluating the performance prong, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In other words, "the performance inquiry must be whether counsel's assistance was

---

[6] There is no dispute there was a basis in the evidence for submitting the fourth-degree instruction. Evidence sufficient to prove recklessness is, by statute, sufficient to prove criminal negligence, *see* § 562.021.4, and evidence of a "serious bodily injury" necessarily is also evidence of a "bodily injury." Therefore, the circuit court would have been required to give the fourth-degree instruction had it been requested. § 556.046.3.

[7] Obviously, Flaherty is not the one asserting this finding was clearly erroneous. Instead, the state argues this Court should hold the motion court's finding with regard to the performance prong of *Strickland* was clearly erroneous, and, therefore, the Court could affirm on that alternative ground without reaching the prejudice prong. The state's logic is unassailable, but – as set forth above – its argument that the motion court clearly erred in finding counsel's performance to be constitutionally deficient does not succeed.

reasonable considering all the circumstances." *Id.* at 688. "Because of the difficulties inherent in making the evaluation, a court must indulge a ***strong presumption that counsel's conduct falls within the range of reasonable professional assistance***; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (emphasis added) (internal quotations omitted).

Here, the motion court found the unique benefits that would have followed from requesting the lesser-included instruction in this case, with no corresponding risks or detriments, were sufficient to overcome *Strickland*'s "strong presumption" that a reasonable trial strategy justified counsel's decision not to request it. Even applying *Strickland*'s rigorous, objective review of the circumstances, this Court holds there was sufficient evidence to support that finding. The range of punishment for fourth-degree domestic assault is much lower than for second-degree domestic assault. *Compare* § 565.073.2 (second-degree domestic assault is a class D felony); § 558.011.1(4) (maximum authorized punishment for a class D felony is imprisonment for "a term of years not to exceed seven years"), *with* § 565.076.2 (fourth-degree domestic assault is a class A misdemeanor); § 558.011.1(6) (maximum punishment for a class A misdemeanor is a jail term not to exceed one year).

Equally obvious and important, had the jury found Flaherty guilty of fourth-degree domestic assault, the jury could not have found him guilty of armed criminal action, and Flaherty would not have been subject to the three-year minimum sentence for that offense. § 571.015.1. Finally, a conviction of fourth-degree domestic assault avoids "the

12

indelible brand of felon," *State v. Lynch*, 679 S.W.2d 858, 862 (Mo. banc 1984) (Blackmar, J., dissenting), and all the collateral consequences that go along with a felony conviction. *See, e.g.*, §§ 561.026 (disqualification from voting and jury service); 571.070 (criminalizing possession of a firearm by a felon).

In light of these circumstances, this Court cannot say the motion court clearly erred in finding trial counsel's failure to request the instruction constituted deficient performance under *Strickland*.[8]

## II. Prejudice Prong

The focus of Flaherty's appeal is his contention the motion court clearly erred in finding trial counsel's deficient performance did not result in prejudice. To show prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that [counsel's]

---

[8]   The state's argument that a reasonable strategic decision for counsel's failure exists, i.e., counsel was primarily seeking an acquittal and requested the instruction for second-degree domestic assault only as an attempt to hedge her bets, is not supported by the record. And, having sought one lesser-included instruction, any presumption that counsel was pursuing an "all-or-nothing" strategy, largely unassailable in a postconviction challenge, *see, e.g.*, *Love v. State*, 670 S.W.2d 499, 502 (Mo. banc 1984), logically cannot apply. The state's arguments that the motion court could have – even should have – reached a different conclusion are unavailing given the amount of deference due under the applicable standard of review. The Court is not holding it would have been clearly erroneous for the motion court to find Flaherty failed to overcome the presumption of a reasonable trial strategy. Instead, the Court holds only – to the extent the motion court found this presumption rebutted by these specific circumstances – its finding was not clearly erroneous.

errors had some conceivable effect on the outcome of the proceeding." *Harrington*, 562

U.S. at 104 (internal quotations omitted). "Counsel's errors must be so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (internal

quotations omitted).

Flaherty argues he met this standard because the evidence of his guilt on the

charge of second-degree domestic assault was not overwhelming. He cites *McNeal v.*

*State*, 412 S.W.3d 886 (Mo. banc 2013) ("*McNeal I*"), and *Watson v. State*, 520 S.W.3d

423 (Mo. banc 2017), in support of this argument. The state, on the other hand, argues

the reasoning in *McNeal I* and *Watson* conflicts with *Strickland*'s prejudice analysis, and,

therefore, this Court should overrule those cases.

Both Flaherty and the state misread *McNeal I* and *Watson*, however, and are

mistaken about their import. It is true *McNeal I* and *Watson* involved failures to request

lesser-included instruction claims substantially similar to Flaherty's claim. *McNeal I*,

412 S.W.3d at 889-90 (claim based on the failure to request an instruction for trespass

when the movant was convicted of burglary); *Watson*, 520 S.W.3d at 435 (claim based on

the failure to request an instruction for second-degree robbery or felony stealing when the

movant was convicted of first-degree robbery). But *McNeal I* and *Watson* are

distinguishable because – unlike Flaherty – the movants in those cases ***did not*** receive an

evidentiary hearing before the motion court overruled their respective motions for

postconviction relief. *McNeal I*, 412 S.W.3d at 889; *Watson*, 520 S.W.3d at 435.

A movant seeking postconviction relief is entitled to an evidentiary hearing on his

or her claims if "(1) the movant pleaded facts, not conclusions, warranting relief; (2) the

facts alleged are not refuted by the record; and (3) the matters complained of resulted in prejudice to the movant." *Webb v. State*, 334 S.W.3d 126, 128 (Mo. banc 2011). In both *McNeal I* and *Watson*, this Court held the motion court clearly erred in denying relief without an evidentiary hearing because the movants had pleaded facts not refuted by the record showing the lesser-included instruction would have been given if requested and counsel's failure to request that instruction resulted in prejudice. As a result, both cases were remanded for evidentiary hearings to take place. *McNeal I*, 412 S.W.3d at 893; *Watson*, 520 S.W.3d at 437-38. After those evidentiary hearings were held, however, the respective motion courts denied relief. This Court and the court of appeals affirmed those judgments on appeal. *McNeal v. State*, 500 S.W.3d 841 (Mo. banc 2016) (*McNeal II*); *Watson v. State*, 580 S.W.3d 37 (Mo. App. 2019). Accordingly, *McNeal I* and *Watson* do not conflict with *Strickland*'s prejudice prong analysis or the "reasonable probability of a different outcome" test. A movant who pleads facts demonstrating prejudice must still prove those facts at the hearing and persuade the motion court "there is a reasonable probability, but for counsel's unprofessional errors, the result of the [trial] proceedings would have been different." *Strickland*, 466 U.S. at 694.

Here, the motion court conducted an evidentiary hearing, but Flaherty failed to carry this burden. The motion court found Flaherty was not prejudiced by trial counsel's failure to request the fourth-degree domestic assault instruction, and this Court cannot say that finding was clearly erroneous. The judge making this finding was the judge in the underlying criminal trial, and this vantage can give the motion court powerful insight into the issues raised in a postconviction proceeding. *See Thomas v. State*, 808 S.W.2d 364,

15

367 (Mo. banc 1991) ("The trial judge is … better equipped to assess defense counsel's performance within the context of the entire case and to measure the ***impact*** of that performance on the outcome of the trial as required" by *Strickland*. (emphasis added)).

Presiding over Flaherty's criminal trial, the judge saw the evidence that: (1) Flaherty consciously disregarded the risks of first waving and then wrestling over a loaded firearm pointed at his wife; and (2) Flaherty's conscious disregard of those risks caused serious physical injury to his wife. More important, the judge saw the impact of that evidence on the jury. And, in the end, the judge was in a far better position than this Court to assess whether – had Flaherty's counsel been able to argue to the jury that Flaherty's acts were merely criminally negligent (and not reckless), and that Flaherty's wife suffered a mere bodily injury (and not a serious bodily injury) – it is reasonably likely the jury would have been persuaded by such arguments and not, as seems quite possible, outraged by them. The additional deference due a judge who also presided over the criminal trial weighs strongly in favor of affirming the motion court's finding that Flaherty was not prejudiced by counsel's deficient performance. *State v. Wells*, 804 S.W.2d 746, 749 (Mo. banc 1991) ("It is also important that the same judge presided at the trial and at the [Rule] 29.15 hearing, and was thus better equipped to assess the strengths and possible weaknesses of the prosecution's case …. We are not disposed to depart from our usual practice, so as to substitute our factual conclusions for his carefully considered determinations.").

Based on the foregoing, this Court holds there was sufficient evidence to support the motion court's finding that counsel's failure to request the lesser-included instruction

16

for fourth-degree assault did not prejudice Flaherty. And, even though the standard of review allows this Court to reject that finding notwithstanding such evidence if – but only if – this Court is left with the definite and firm conviction that a mistake has been made, the caution with which such a highly intrusive tool should be used counsels strongly against its use here. The motion court's superior opportunity to assess the credibility of the witnesses and the overall persuasive force of Flaherty's motion, coupled with that same judge's opportunity to gauge the impact of changes in counsel's performance on the underlying trial, render it impossible for this Court to say, with a definite and firm conviction, that the motion court was clearly erroneous in finding Flaherty was not prejudiced.

## Conclusion

Because the motion court's findings and conclusions in this matter were not clearly erroneous, its judgment overruling Flaherty's motion for postconviction relief is affirmed.

_____
Paul C. Wilson, Judge

All concur.

17