**Harold Floyd WICKMAN, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 13882.

Missouri Court of Appeals,
Southern District,
Division Two.

June 25, 1985.

Larry Maples, Asst. Public Defender, Joplin, for appellant.

William L. Webster, Atty. Gen., Leah A. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Harold Floyd Wickman ("movant") appeals from a judgment denying his amended motion under Rule 27.26 [1] to vacate his conviction of robbery in the first degree and 12-year prison sentence. The conviction, a result of trial by jury, was affirmed on direct appeal. *State v. Wickman,* 655 S.W.2d 749 (Mo.App.1983).

The amended motion to vacate, prepared with the assistance of appointed counsel, alleges that movant received ineffective assistance from the attorney who represented him at the jury trial. We hereafter refer to that attorney as "defense counsel." In denying the motion to vacate, the circuit court, hereafter referred to as "the motion court," took note of the transcript and records of the jury trial and concluded that an evidentiary hearing on the motion was not required.

---

1. Rule references are to Missouri Rules of Criminal Procedure (15th ed. 1984).

Movant, insisting he was entitled to an evidentiary hearing, briefs three assignments of error. The first involves a complaint by movant that defense counsel was derelict in failing to obtain a pretrial examination of movant by a psychiatrist.

The motion court, in its findings of fact and conclusions of law, Rule 27.26(i), noted that movant went to trial on the robbery charge on the pleas of not guilty and not guilty by reason of mental disease or defect excluding responsibility. Prior to trial, upon motion by defense counsel, the court had ordered a "mental examination" to be made of movant at a community mental health center. The examination was made by John R. Godfrey, a "licensed psychologist."

At the time of the examination, § 552.-030.4, Laws 1980, pp. 517–18, provided, in pertinent part:

"Whenever the defendant ... has given the written notice ... [of his purpose to rely on the defense of not guilty by reason of mental disease or defect excluding responsibility] ... and such defense has not been accepted ... the court shall, after notice and upon motion of either the state or the defendant ... appoint one or more private *psychiatrists* as defined in section 632.005,[2] who are neither employees nor contractors of the department of mental health for purposes of performing the examination in question, to examine the accused or shall direct the director of the department of mental health, or his designee, to have the defendant so examined by one or more individuals designated by the director, or his designee, as qualified to perform examinations pursuant to this chapter." (Emphasis added.)

Nothing in the record suggests that John R. Godfrey, who examined movant, met the statutory definition of "psychiatrist," nor is there any indication that Godfrey had been designated by the director of the depart-ment of mental health or his designee as qualified to perform examinations pursuant to Chapter 552, RSMo 1978. Consequently, it appears that the pretrial examination of movant was made by a person who lacked the qualifications required by § 552.030.4, *supra.*

Paragraph 9(a)(9) of movant's amended motion to vacate is the paragraph pertinent to his first assignment of error. It alleges:

"Movant was rendered ineffective assistance of counsel by counsel's failing to obtain for Movant a mental examination by a psychiatrist as required by *Mo.Rev. Stat.* Chapter 552 on the issue of competency and/or mental disease or defect has been pleaded." Regarding this complaint, the motion court said:

"Movant also objects that he was denied effective assistance of counsel because his counsel failed to request further mental examination.... [M]ovant was examined at Ozark Community Mental Health Center. At the trial, movant relied upon the defense of intoxication. His own witnesses testified that he was normally a rational, well behaved individual, but that when he became intoxicated, he acted differently and often irrationally. This defense was thoroughly presented to the jury, the appropriate instruction was submitted by defense counsel and given to the jury, and the jury found the issue against defendant. There is no showing that movant was prejudiced by the failure to request further mental examination."

Evidence at the jury trial revealed that movant was 41 years of age and, in Godfrey's words, was suffering from "chronic alcoholism," for which he had "been through numerous treatment programs." Movant's long-standing alcoholism was confirmed by the testimony of his mother, his sister and his fiancee (herself a "recovering alcoholic").

**2.** Section 632.005(17), Laws 1980, p. 566, defines "psychiatrist" as "a licensed physician who in addition has successfully completed a training program in psychiatry approved by the Ameri-can Medical Association, the American Osteopathic Association or other training program are [sic] certified as equivalent by the department [of mental health]."

There is nothing in the transcript of the jury trial indicating that movant had ever manifested any mental disease or defect or that he had ever been treated for, or diagnosed as having, any such condition. Indeed, it is obvious from the record of the jury trial that the purpose of the plea of not guilty by reason of mental disease or defect excluding responsibility was not to enable movant to contend that he was afflicted with a mental disease as defined by § 552.030.1, Laws 1980, p. 517.[3] Instead, the purpose was to ensure that movant could assert the "diminished capacity defense" that he, by reason of intoxication at the time of the robbery, was unable to act with the purpose of committing it.[4] Defense counsel revealed this by the following comment when movant was arraigned on the amended information on the morning of trial: "We'll waive formal reading of the information to that charge and enter a plea of not guilty by reason of diminished capacity."

The trial court pointed out that such was not a proper plea, but that movant could plead not guilty and not guilty by reason of mental disease or defect. Defense counsel consented that the plea be shown that way.

In an effort to provide evidentiary support for movant's hypothesis that he was too drunk to act with the purpose of committing the robbery, defense counsel elicited testimony from the robbery victim that movant "had been drinking." One investigating officer recalled that movant "appeared to be intoxicated," another officer described movant as "pretty heavily intoxicated," and a third officer conceded movant was "intoxicated," but the officer did not know to what extent. Movant's mother, sister and fiancee testified, in substance, that when movant was sober, he was responsible and well-behaved, but when intoxicated he was a different person, becoming irresponsible and uninhibited. Randy M. Kiser, a clinical psychologist called as a witness by defense counsel, confirmed that many alcoholics, when intoxicated, are "not able to rationally assess their own behavior." In response to a question hypothesizing the facts of the robbery in the instant case, Kiser expressed the opinion that the perpetrator's "mental capabilities would be very seriously impaired at that time, their ability to make judgments, to reason, to plan, to anticipate."

An instruction patterned on MAI–CR 2d 3.30.1,[5] submitting the issue whether movant's alleged intoxication prevented him from acting with the purpose of committing the robbery, was given at defense counsel's request. Defense counsel relied on the instruction in arguing the issue to the jury.

It is thus evident that the trial strategy employed by movant and defense counsel was based on movant's alleged intoxication and well-documented alcoholism, and not on any supposed mental disease or defect that would have excused movant from criminal responsibility under § 552.030.1, *supra.* Godfrey's report expressed the opinion that movant neither suffered from mental disease or defect nor lacked the capacity to understand the proceedings against him or to assist in his defense. It

---

3. Section 552.030.1, Laws 1980, p. 517, states: "A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law."

4. The statute governing that issue at the time of the alleged robbery was § 562.076, RSMo 1978. It provided, in pertinent part:

"1. A person who is in an intoxicated ... condition whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition

(1) Negatives the existence of the mental states of purpose or knowledge when such mental states are elements of the offense charged or of an included offense; ...."

The statute has since been amended. Laws 1983, p. 924.

5. The version of MAI–CR 2d 3.30.1 in effect at the time of movant's trial was the version dated "1–1–79." It was withdrawn effective October 1, 1984, by order of the Supreme Court of Missouri on August 13, 1984. MAI–CR 2d XIV–AE to XIV–AL. The withdrawal was evidently ordered because of the statutory change mentioned in footnote 4, *supra.*

explained: "This is not seen as a situation where Mr. Wickman was incapable of understanding the wrongfulness of his conduct nor was he incapable of conforming his behavior to the requirements of the law."

Movant, in his amended motion to vacate, does not allege that there was any reason whatsoever to suspect that at the time of the robbery he had any mental disease or defect which would have excused him from criminal responsibility, nor does he allege that after receiving Godfrey's report he desired to be examined by a psychiatrist to explore the possibility of utilizing such a defense. Movant simply complains that he never received an examination by a psychiatrist and that defense counsel was ineffective in failing to insist on one. Movant does not allege that he remonstrated to defense counsel about the examination by Godfrey or that he ever asked defense counsel to demand an examination by a psychiatrist.

■■■ In order to prevail on a claim of ineffective assistance of counsel, a prisoner seeking postconviction relief must show that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would employ under similar circumstances, and that he was prejudiced thereby. *Seales v. State,* 580 S.W.2d 733, 736-37 (Mo. banc 1979); *Jackson v. State,* 672 S.W.2d 367, 368[2] (Mo. App.1984). A prisoner is entitled to an evidentiary hearing on a motion under Rule 27.26 only if the motion alleges facts, not conclusions, which, if true, would entitle him to relief, and such allegations are not refuted by the files and records in the case. *Smith v. State,* 513 S.W.2d 407, 411 (Mo. banc 1974), *cert. denied,* 420 U.S. 911, 95 S.Ct. 832, 42 L.Ed.2d 841 (1975); *Barnett v. State,* 618 S.W.2d 735, 736[1] (Mo.App. 1981). Our review is limited to a determination whether the findings, conclusions and judgment of the motion court are clearly erroneous. *Futrell v. State,* 667 S.W.2d 404, 405[1] (Mo. banc 1984); Rule 27.26(j). They are clearly erroneous only if upon

review of the entire record we are left with the definite and firm impression that a mistake has been made. *Knight v. State,* 491 S.W.2d 282, 284[1] (Mo.1973); *Anderson v. State,* 487 S.W.2d 455, 460[3] (Mo. 1972).

■■ Applying these principles to the record before us, we find no merit in movant's first assignment of error. At the jury trial, prior to voir dire, the trial judge, noting that he had to inform the veniremen by MAI–CR 2d 1.02 (1–1–79) whether the issue of mental illness was involved in the case, asked movant and defense counsel about the matter. Defense counsel responded: "Your Honor, diminished capacity is, and if I'm not mistaken, I thought we had by letter informed the Court that we would be relying on that, and also provided a copy of that to the prosecutor not long after the preliminary hearing." Defense counsel added: "We will be asking at the close of the trial for an instruction on intoxication, so I believe that would come under the diminished capacity defense."

It was immediately after these remarks that defense counsel endeavored to enter the plea of "not guilty by reason of diminished capacity" on movant's behalf. The trial court's response to that has been recounted earlier.

Movant's amended motion to vacate does not explain how an examination by a psychiatrist would have benefited him, given the theory of defense asserted at the jury trial, nor does the motion allege how movant was prejudiced by the lack of such an examination. Additionally, as already noted, there is no allegation that movant now has, or has ever had, a mental disease or defect excluding responsibility, or that there has ever been any reason to suspect that he was so afflicted.

That movant participated in formulating the trial strategy is manifest from a list of witnesses he prepared under date of August 6, 1982.[6] According to the list, the witnesses could testify as to how movant

---

**6.** The jury trial took place August 13, 1982.

behaved when sober, and some of them could describe how he behaved when intoxicated.

In view of movant's theory of defense at the jury trial, which is fully demonstrated by the transcript, we hold that the motion court's denial, without an evidentiary hearing, of movant's bare allegation that defense counsel was ineffective in failing to obtain an examination of movant by a psychiatrist is not clearly erroneous. Movant's first point is, consequently, denied.

■ Movant's second assignment of error is that the motion court should have held an evidentiary hearing on movant's claim that defense counsel was ineffective in failing, at the jury trial, to call witnesses listed by movant whose testimony would have been beneficial to his defense. Movant's list of witnesses, to which reference has already been made in discussing the first assignment of error, was appended by movant as "Exhibit A" to his amended motion to vacate.

Seven persons are named in the list. Among them are movant's sister and his fiancee, both of whom, as we have seen, were presented as witnesses by defense counsel. Of the remaining five, only one, according to the list, could have testified as to movant's conduct when intoxicated. That individual was the husband of movant's sister. The testimony of the other four, according to the list, would have been limited to movant's conduct when sober, his efforts toward rehabilitation, and his participation in Alcoholics Anonymous.

Pertinent to movant's second assignment of error, the motion court's findings include this:

"The movant also claims that he was denied effective assistance of counsel in that he failed to call certain witnesses. These witnesses are listed on movant's Exhibit A with a brief statement as to the nature of their testimony. In each case, the testimony they would have given was to the effect that movant was an alcoholic, but that he was attempting to overcome his alcoholism and that when he was sober, he was well behaved and a person of good character.

"At the trial, movant actually did call three witnesses, [his mother, sister and fiancee], all of whom testified to the same matters. In other words, the witnesses whom movant desired to have called would have been repetitious. There is no showing that movant was prejudiced by the failure to call these witnesses."

To this, we would add that the jurors were evidently convinced of movant's alcoholism, as they sent the following note to the trial judge during their deliberations: "Is there a rehabilitation center that he could be forced to attend that would help his alcoholic problem?"

It has been held that failure to produce cumulative alibi witnesses, in the absence of a clear showing that they would have been helpful, is not ineffective representation by counsel. *Baker v. State*, 670 S.W.2d 597, 599[4] (Mo.App.1984); *Porter v. State*, 596 S.W.2d 480, 482[4] (Mo.App. 1980).

We see no reason why the same rationale should not apply to the uncalled witnesses here. Movant's amended motion alleges they would have been "beneficial" to his case, but there is no clue as to what benefit they could have provided. It is clear from the transcript of the jury trial that none of the uncalled witnesses were present during the robbery; consequently, none of them could have testified as to movant's alleged intoxication at that time. The fact that movant was an alcoholic was not disputed, and his behavior when sober and when drunk was amply described by his mother, sister and fiancee.

We therefore reject movant's contention that the motion court erred in denying, without an evidentiary hearing, movant's complaint that defense counsel was ineffective in calling only two of the seven witnesses listed in "Exhibit A." Movant's second point is denied.

■ Movant's final assignment of error is that the motion court wrongly denied,

without an evidentiary hearing, movant's claim that defense counsel was ineffective in failing to request that the jury be instructed "on the lesser-included offenses of robbery in the second degree and stealing from the person." The motion court's findings pertinent to this assignment of error are:

"The evidence at the trial showed that movant entered a liquor store being operated by Jerry Gilstrap, and pulled a gun from his boot, pointed it at Gilstrap's chest and demanded the money from the cash register. Some conversation took place during which Gilstrap noted that movant was intoxicated. After obtaining the money, movant left the store, and Gilstrap followed to the doorway to attempt to get his license number, and when he observed movant place the weapon in his pocket and walk away, he tackled movant from behind and quickly subdued him. An off duty police officer driving by at this moment saw what happened and took movant into custody. Only after movant was subdued by Gilstrap and the gun taken from his pocket did Gilstrap realize that it was not a real gun, but only a replica. This instrument was admitted into evidence and observed by the Court and the jury to be a realistic representation of a revolver.

"Excerpts from the testimony of Jerry Gilstrap are as follows: ... 'Q. The defendant walked in and then you stepped behind the counter. About how far away was he from you at that time? A. Ten to fifteen feet at the most. Q. Okay, what did he do next? A. Well, he was messing with his boot. He reached down in his boot—I didn't know what for at the time; apparently to pull up his sock or something to that extent—and he pulled a pistol out. And he said, "Well, I hate to do this but I'm going to have to rob you. I'm needing some money." Q. Okay, when you said he pulled a pistol on you, did he point the pistol at you? A. Yes, ma'am. Q. And where did he point the pistol, what part on your body? A. At my chest.... [Q.] Was he pointing the gun at you through all of this? A. Yes, he was. Q. Still at your chest? A. Uh-huh, yes. Q. And at that time did you deliver the cash from the cash register? A. Yes, I did. Q. To him? A. Yes. Q. Did you at any time try to take the pistol away from him? A. No, not at that time. Q. Why not? Were you frightened? A. Yes, I was. I was shaking at the time all of this was going on.... Q. Now during this whole ordeal did you believe that the pistol was real? A. Yes, I did. Q. You had no reason to believe otherwise? A. No reason. Q. When did you find out otherwise? A. After I took it from him in the parking lot.'

"Section 569.020 [RSMo 1978] states as follows:

'1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime..... displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.'

"Section 556.046 [RSMo 1978] states in part as follows:

'2. The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.'

"From the foregoing, it is obvious that the evidence did not support instructions on the lesser included offenses. Jerry Gilstrap's testimony that he thought the gun was real and that he was frightened by it was not controverted. Furthermore, as the Court and jury could observe, Gilstrap was a younger and stronger man than the movant and when the weapon was placed in movant's pocket, he was able to subdue movant with little difficulty. Thus it is obvious that Gilstrap would not have handed the money over to movant had he realized the gun was not real. Also, the court and the jury observed the instrument itself and could see that it appeared to be a real gun. Therefore it would have been

a waste of time for movant's attorney to have requested the instructions on the lesser included offenses since they were not supported by the evidence and would not have been given by the Court."

Movant, in his brief, maintains that because one of the investigating officers testified he could, at a distance of 4 or 5 feet, see that the barrel and cylinder holes of the putative revolver were "plugged," the jurors could have determined that it did not appear to be a deadly weapon or dangerous instrument. Therefore, says movant, there was an evidentiary basis for instructing the jury on robbery in the second degree, § 569.030, RSMo 1978, and stealing from the person of the victim, § 570.030.3(2), Laws 1981, pp. 638–39, and defense counsel was ineffective in failing to request the trial court to instruct on those offenses.

We disagree. In *State v. Dickerson,* 607 S.W.2d 196 (Mo.App.1980), a case of remarkable factual similarity, the accused was convicted of robbery in the first degree. The victim testified that the accused pointed at him what appeared to be an automatic pistol, announced a holdup and demanded his wallet. The accused complained on appeal that the trial court should have instructed the jury on the lesser offenses of robbery in the second degree and stealing inasmuch as there was no evidence that the pistol was a dangerous or deadly instrument.

The Court of Appeals disagreed, holding there was no evidence of a robbery committed by any method except the display and threatened use of what appeared to be a deadly weapon. Consequently, there was no evidence of any degree of robbery save first degree, and the trial court was not required to instruct on any lesser offense. *Id.* at 197–98.

Section 556.046.2, RSMo 1978, limits the requirement of instructing down to those instances where there is some affirmative evidence of a lack of an essential element of the higher offense which would not only authorize acquittal of the higher but sustain a conviction of the lesser. *State v.*

*Olson,* 636 S.W.2d 318, 322[6] (Mo. banc 1982).

In movant's case, there was no evidentiary support for a finding that any degree of robbery except first degree was committed. There was no evidence that the victim, Gilstrap, surrendered the cash for any reason other than the threat of immediate use of physical force enhanced by the display of what appeared to be a deadly weapon. The motion court was therefore correct in holding that a request for instructions on robbery in the second degree and stealing from the person would have been futile. That being so, defense counsel was not ineffective in failing to make such a request. Movant's third assignment of error is, accordingly, denied.

Judgment affirmed.

PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.